# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### Case No.: 22-15358

MICHAEL ERWINE,

    Plaintiff-Appellant,

    vs.

CHURCHILL COUNTY, a political
subdivision of the State of Nevada, and
BENJAMIN TROTTER, former Churchill
County Sheriff,

    Defendant-Appellees.

_____/

## OPENING BRIEF OF PLAINTIFF-APPELLANT

## MICHAEL ERWINE

Appeal from the Judgment of the United States District Court
District of Nevada

Case No. 3-18-cv-00461-RCJ-WGC

Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

# TABLE OF CONTENTS

I.    JURISDICTIONAL STATEMENT……………………...…… 1

II.    ISSUES PRESENTED FOR REVIEW…………...…………….. 2

III.    STATEMENT OF THE CASE………………………...….. 3

    a.  Facts ……………………………………………..….. 3

        1.  The Beaulieu Incident……………………………… 4

        2.  The Maes Incident……………………………….. 5

        3.  Sheriff Trotter fires Erwine and surreptitiously places a stigmatizing memorandum in his employee file……… 7

        4.  Erwine applies for other law enforcement jobs and discovers Trotter's Memorandum in his file a year and a half later…………………………………………… 11

    b.  Procedural History……………………………….……… 15

    c.  Ruling Presented for Review..………………...…...……..… 15

IV.    SUMMARY OF THE ARGUMENT.…………….……..… 16

V.    STANDARD OF REVIEW…………………………...……... 17

VI.    ARGUMENT..………………………………….…..……… 18

    a.  Erwine was denied any due process under 14th Amendment despite the publication of stigmatizing accusations coincident with his termination from Churchill County …………….. 18

b. The District Court erred in disregarding the opinions of Erwine's expert Ron Dreher…………………….....……… 26

c. Erwine's Monell claim against Churchill County should proceed along with his 14th Amendment Due Process claim against Sheriff Trotter…………………………....…….. 28

VII.    CONCLUSION………………………….....………....…… 30

VIII.   STATEMENT OF RELATED CASES…………………....….... 31

IX.    CERTIFICATE OF COMPLIANCE…………….….…......… 32

CERTIFICATE OF SERVICE   …………………………….. 33

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (U.S. 1986)........................................................................ 17

*Anderson v. Warner*
    451 F.3d 1063 (9th Cir. 2006).............................................................. 29

*Blantz v. Cal. Dep't of Corr. & Rehab*
    727 F.3d 917 (9th Cir. 2013)................................. 20, 22, 23, 24, 25, 26

*Board of Regents v. Roth*
    408 U.S. 564 (1972)................................................................................ 19

*Brady v. Gebbie*
    859 F.2d 1543 (9th Cir. 1988)............................................................. 22

*Campanelli v. Bockrath*
    100 F.3d 1476 (9th Cir. 1996).............................................................. 27

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)........................................................................ 17, 26

*Codd v. Velger*
    429 U.S. 624, 97 S. Ct. 882 (1977)...................................................... 19

*Cox v. Roskelley*
    359 F.3d 1105 (9th Cir. 2004)................................................. 19, 21, 23

*Fogel v. Collins*
    531 F.3d 824 (9th Cir.2008).................................................................. 30

*Furnace v. Sullivan*
    705 F.3d 1021 (9th Cir. 2013)............................................................. 17

*Goldstein v. City of Long Beach,*
  715 F.3d 750 (9th Cir. 2013) ................................................................ 29

*Goss v. Lopez,*
  419 U.S. 565 (1975) .............................................................................. 19

*Hoffa v. United States*
  385 U.S. 293, 87 S. Ct. 408 (1966) ..................................................... 27

*Jett v. Dallas Independent School District*
  491 U.S. 701 (1989) .............................................................................. 29

*Kramer v. Cullinan*
  878 F.3d 1156 (9th Cir. 2018) ............................................................. 23

*Llamas v. Butte Cmty. Coll. Dist.*
  238 F.3d 1123 (9th Cir. 2001) ........................................................ 20, 24

*Lytle v. Carl*
  382 F.3d 978 (9th Cir.2004) ................................................................ 29

*Monell v. Dep't. of Social Services of City of New York,*
  436 U.S. 658, 98 S. Ct. 2018 (1978) ................................................... 28

*Mustafa v. Clark Cty. Sch. Dist.*
  157 F.3d 1169 (9th Cir. 1998) ............................................................. 20

*Paul v. Davis*
  424 U.S. 693 (1976) .............................................................................. 19

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986) .............................................................................. 30

*Siegert v. Gilley*
  500 U.S. 226 (1991) .............................................................................. 22

*Thomas v. Ponder*
     611 F.3d 1144 (9th Cir. 2010)..................................................... 17

*Tibbetts v. Kulongoski*
     567 F.3d 529 (9th Cir. 2009).................................................... 22

*Vanelli v. Reynolds School District No. 7*
     667 F.2d 773 (9th Cir. 1982)................................................ 19, 20

*West v. Atkins*
     487 U.S. 42, 108 S. Ct. 2250 (1988)...................................... 18

*Wisconsin v. Constantineau*
     400 U.S. 433, 91 S. Ct. 507 (1971)........................................ 18

*Zetwick v. Cty. of Yolq*
     850 F.3d 436 (9th Cir. 2017)............................................. 17, 27

## STATUTES

28 U.S.C. Section 1291……………………………………..……… 1

28 U.S.C. Section 1331……………………………………………… 1

28 U.S.C. 1367(c)(3)……………………...………………………… 15

42 U.S.C. 1983……………………………...………..1, 2, 29

NRS 239B.020………………………………………...…..…… 21

NRS 248.040…………………………………………..……… 29

## RULES

FRAP 3 and 4………………………………………………...…1

FRCP 56………………………………………………..……….. 17

Michael Erwine (hereinafter "Erwine") seeks reversal of a District Court Order granting a Motion for Summary Judgment in favor of CHURCHILL COUNTY, a political subdivision of the State of Nevada (hereinafter "Churchill County") and former CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER (hereinafter "Sheriff Trotter").

## I. JURISDICTIONAL STATEMENT

The Order on appeal was entered in this action on March 9, 2022 by the Honorable Judge Robert C. Jones of the United States District Court, District of Nevada, in Case No. 3:18-cv-0461-RCJ-WGC. 1-ER-2-23.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. Section 1331 as this case arises under federal law, specifically, the Civil Rights Act codified in 42 U.S.C. Section 1983.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1291 and Federal Rules of Appellate Procedure ("FRAP") 3 and 4. This appeal is timely as the Notice of Appeal (3-ER-514-17) was filed on March 9, 2022. This appeal is from the Order granting Sheriff Trotter and Churchill County's Motion for Summary Judgment, which is a final order because it disposes of all parties' claims.

## II. ISSUE PRESENTED FOR REVIEW

The issue presented for review is whether the District Court erred by granting Churchill County and Sheriff Trotter summary judgment on Erwine's liberty interest due process claim under 14th Amendment US Constitution and associated *Monell* claim. More specifically, the issue is whether a genuine issue of material fact exists as to whether Sheriff Trotter violated Erwine's due process rights under the 14th Amendment by making stigmatizing statements about Erwine and by placing a memorandum in his file impugning Erwine's morality or honesty in connection with his termination from Churchill County without any notice or opportunity for a name clearing hearing.

The U.S. Constitution Amendment XIV, Section 1, provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws

42 U.S.C.A. Section 1983, provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any

citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges,
or immunities secured by the Constitution and laws, shall be
liable to the party injured in an action at law, suit in equity, or
other proper proceeding for redress….

# III. STATEMENT OF THE CASE

## A. Facts

This case involves a corrupt rural Nevada sheriff's office
surreptitiously framing and retaliating against a rookie deputy for
observing and recording the mistreatment of an inmate at the Churchill
County jail by his fellow deputies - with the effect of destroying the
reputation and employment prospects of the rookie deputy.

Coincident with firing Erwine, Sheriff Trotter placed a
memorandum in Erwine's employment file that falsely accused Erwine of
egregious misconduct, without ever informing Erwine that the
memorandum was to be placed into his file.  Erwine was not aware of the
existence of the memorandum until a year and a half after he was
terminated.

Between December 9, 2015 and October 10, 2016, Churchill
County employed Erwine in the capacity of Detention Deputy Sheriff at
the Churchill County County Jail.  2-ER-68. From the commencement of

Erwine's employment with Churchill County, Erwine witnessed the
Churchill County's officials blatantly disregard basic Constitutional rights.
*Id.*

### 1. The Beaulieu Incident

October 8, 2016, Erwine went in for the day shift and began
checking cells. Erwine was informed that an inmate, Andrew Beaulieu
("Beaulieu") was in the security cell and needed to be booked. 2-ER-68.
When Erwine arrived at Beaulieu's security cell he noticed blood on the
walls and asked the grave shift deputy what the blood was from. The
grave shift deputy informed Erwine that Beaulieu had come in with a cut
on his hand and that it ripped open while in the cell. After investigating
the circumstances, Erwine discovered Beaulieu had been requesting water
for hours. Erwine was informed by the inmate and later confirmed during
review of surveillance footage that every time Beaulieu would request
water, the grave shift deputy would flush the drain in Beaulieu's cell
making Beaulieu's request inaudible over the flushing noise. Erwine
provided Beaulieu with water and explained to Beaulieu what the rest of
the booking process would look like. During this time, Beaulieu expressed

to Erwine that the grave shift deputies were "assholes", and he would be filing a lawsuit against them. 2-ER-69.

Erwine continued to conduct his rounds in the jail. 2-ER-69. While Erwine was conducting his rounds, other inmates asked Erwine what had happened to the "guy in the security cell" the previous night and explained what the grave shift did "was messed up." *Id.* Erwine reviewed surveillance footage of the grave shift's interaction with Beaulieu before he removed him for booking, mainly to be aware of any safety concerns with Beaulieu before removing him from the security cell. Erwine did not note any alarming actions by Beaulieu wherein Erwine would need to be concerned, however, he did note concerning inappropriate acts of the grave shift deputy that he believed needed to be brought to his sergeant's attention. Since the concerns were not an immediate threat, and the sergeant did not work on weekends, Erwine chose to log the events on his computer so he could follow up with his sergeant on Monday, October 10, 2016, when his sergeant returned to work. *Id.*

### 2. The Maes Incident

The next day Sunday, October 9, 2016, during Erwine's dayshift, Churchill County Deputy Jabines had dropped a container of

miscellaneous tools and other items inside of a booking cage. 2-ER-69.
Included in these items were screwdrivers and other sharp instruments.
Deputy Jabines asked an inmate, Matthew Maes, to come into the booking
cage and pick them up for her. Erwine felt that bringing in an inmate to
pick up the sharp inmates created a dangerous situation for everyone
involved, i.e. to have an inmate come into the booking cage to pick up
items which could be easily used as weapons. *Id.* Erwine questioned
Deputy Jabines about this but her only response was "Senior Deputy"
which Erwine understood as to mean he did not have a say in the matter.
*Id* at 70. When Maes came into the cage, Erwine positioned himself
between Maes and the control panel of the facility. Erwine was in an
uncomfortable position with Maes being only a few feet away from
Erwine and backed into a corner. *Id.* Erwine removed his taser from its
holster and held it in his hand with the taser pointed to the ground.
Erwine removed the cartridge from the taser due to the close proximity of
inmate Maes to both Erwine and Deputy Jabines, who was also in the
case. Maes cleaned up the items and left the cage without incident. *Id.*

///

///

### 3. Sheriff Trotter fires Erwine and surreptitiously places a stigmatizing memorandum in his employee file

Near the end of Erwine's shift on October 10, 2016, Erwine was confronted by Sheriff Trotter. 2-ER-70. Sheriff Trotter informed Erwine that he was aware of the booking that took place over the weekend with Beaulieu and that Erwine was intentionally trying to harm the department. *Id.* Erwine began to speak about the Beaulieu Incident as he had originally intended to do from the beginning of his shift that day, however, Erwine was not afforded any opportunity to explain what he had witnessed or discovered, nor was he provided with any notice of the meeting or that he was to be terminated at the meeting. *Id.* Instead, Trotter stated Erwine had two choices: he could resign, or the Department would terminate his employment effective immediately. Either way, Erwine was informed his employment was not continuing after the meeting. *Id.*

At the meeting with Sheriff Trotter on October 10, 2016, Erwine was informed that he would receive his vacation pay/sick pay if he chose to resign rather than be terminated, but that he would be terminated in either case. 2-ER-75. Erwine's financial situation was not secure, and he had moved to Churchill County and signed a lease so that he could work as a deputy there. Further, the job at Churchill county was his first

position in law enforcement after graduating from the academy, and a termination would have been catastrophic on his future career prospects. Erwine was forced to make a snap decision under financial duress and Erwine signed a Letter of Separation on October 10, 2016. 2-ER-76.

Unbeknownst to Erwine, when Erwine was fired Sheriff Trotter placed a memorandum in Erwine's employee file that contained stigmatizing statements about Erwine, dated October 10, 2016. 2-ER Vol-78-80. Sheriff Trotter's October 10, 2016 Memorandum contains false allegations and stigmatizing conclusions - that Erwine engaged in "unprofessional behavior," that he created liability for Churchill County, that he discredits Churchill County and the entire profession of law enforcement, that Erwine violated "behavior standards," and that Erwine's behavior was "extremely disturbing and disappointing." *Id.* at 80. The Memorandum also states that Erwine engaged in "conduct unbecoming a deputy" and an "unjustifiable use of force." *Id* at 79.

In responses to requests for admission (2-ER-82-87) Churchill County admitted the following facts surrounding Erwine's termination:

- Erwine was provided with no written notice that he had been accused of misconduct before Erwine executed the Letter of Separation on October 10, 2016 *Id.* at 83;

- Erwine was not afforded a hearing before Erwine executed the Letter of Separation on October 10, 2016 *Id.* at 83;

- Sheriff Trotter authored the October 10, 2016 Memorandum *Id.*;

- Sheriff Trotter placed the October 10, 2016 Memorandum into Erwine's personnel file *Id.* at 83;

- The October 10, 2016 Memorandum was not provided to Erwine before the Letter of Separation on October 10, 2016 was executed by Erwine *Id.* at 83;

- The October 10, 2016 Memorandum was never shown to Erwine such that he may have read and initialed the document before it was placed in his personnel file *Id.* at 84; and

- The October 10, 2016 Memorandum contains no notation to the effect that the document was shown to Erwine and that Erwine refused to initial the document *Id* at 84.

Also included in Erwine's personal file at Churchill County, unbeknownst to him, were statements from Churchill County Deputy

Thompson and Sergeant Summers describing the Beaulieu incident (2-ER-89-93), and a statement from Deputy Jabines describing the Maes incident. 2-ER-95. Sergeant Summers' statement in 2-ER-92-93 indicates that he believed that Beaulieu had spoken to Erwine about a lawsuit and that Erwine told Beaulieu that a lawsuit would be winnable. Deputy Jabines' statement in 2-ER-95 also expressly mentions a possible lawsuit involving Maes against the Churchill County Sheriff's Office, and begins with the conclusion that Erwine violated Churchill County's Detention Use of Force Policy. Erwine was never provided with the ability to contest the assertions of Sheriff Trotter in the October 10, 2016 Memorandum or the statements of the other Churchill County employees that were placed into his file because he was not aware of the existence of the accusations against him until over a year and a half after they were placed in his file. 2-ER-249-50.

According to the Affidavit of Beaulieu (2-ER -229-30) Erwine did nothing to encourage Beaulieu to file a lawsuit against Churchill County, as he was accused of doing by Sheriff Trotter in the October 10, 2016 Memorandum. At the deposition of Matthew Maes, Erwine's supposed victim of the use of force incident referred to in Sheriff Trotter's October

16, 2016 Memorandum, Maes testified that the idea that Erwine used excessive force on him was untrue, and that "it never happened." 2-ER-234.

When shown Sheriff Trotter's Memorandum at 2-ER-78-80 describing Deputy Jabines' account of what happened in the case with Erwine, Maes stated that it appeared to him that Jabines may be trying to set up Erwine because Jabines' description of what happened was so inaccurate. 2-ER-242.

### 4. Erwine applies for other law enforcement jobs and discovers Trotter's Memorandum in his file a year and a half later

Subsequent to Erwine's departure from the Churchill County Sheriff's Office, after Erwine sought other law enforcement jobs, Erwine was rejected from multiple police agencies for failing to pass background investigations, including the Washoe County Sheriff's office and LVMPD. As described Declaration No. 2 of Michael Erwine in 2-ER-249-50 and the documents in Attachment A thereto, on January 17, 2017, Erwine received a letter from the Washoe County Sheriff informing him that, "...the Sheriff's Office has determined that you do not meet the established standards for a position as Deputy Sheriff and therefore you

have not been selected at this time." 2-ER-252. On February 7, 2017, Erwine received an email from Las Vegas Metropolitan Police in response to his application for employment informing him, "…based on review of your background history, you will no longer be considered for the position(s) of Police Recruit C 16-001 November with the Las Vegas Metropolitan Police Department. Candidate does not meet LVMPD hiring standards based on Employment History" and "You are not eligible to apply with LVMPD for any position indefinitely." 2-ER-253.

Erwine became suspicious that there was something in his employee file at Churchill County about which he was unaware. 2-ER-249-50. Upon requesting and receiving his employee file from Churchill County on April 13, 2018, Erwine discovered the existence of the October 10, 2016 Memorandum and the statements regarding the incidents with Maes and Beaulieu were placed in his employment file by Sheriff Trotter. *Id* at 250. As such, Erwine was unaware that he had been accused of misconduct and that the stigmatizing statement was placed in his file for a year and a half. *Id* at 250. As indicated in the declaration of Michael Erwine, prior to being terminated by Churchill County in 2016, Erwine had never failed a background investigation. 2-ER-259.

Despite initially denying that the October 10, 2016 Memorandum and personnel file was shared with any outside law enforcement agency (3-ER-379-80) the Defendants later admitted that the October 10, 2016 Memorandum, in addition to Erwine's entire personnel file, was shared with the Washoe County Sheriff's Office, but only after Washoe County provided a response to a subpoena in which it was clear that Erwine's entire employee file was sent to the Washoe County Sheriff's Office. 2-ER-85-6. Further, Erwine's background investigation file from the Las Vegas Metropolitan Police Department ("LVMPD") contains a note from the investigator Scott Olsen indicating that Olsen had a telephone conversation with Sheriff Trotter regarding Erwine's employment with Churchill County. 4-ER-569-70. Sheriff Trotter indicated to Olsen that Erwine was terminated because he initiated an unauthorized investigation that was beyond his duties and that Erwine was sympathetic to an inmate who was looking to file a lawsuit against Churchill County - reiterating the gist of the false claim in the October 10, 2016 Memorandum. *Id.* Olsen concludes his notes by stating that Erwine's actions make him unsuitable for employment with LVMPD, referring to what Sheriff Trotter said. *Id.*

Erwine retained a police practices expert, Ron Dreher, whose expert report at 2-ER-274-88, to opine as to the harm that was done to Erwine's career as a result of the actions of Sheriff Trotter. As is clear from his resume Dreher has extensive experience in law enforcement and in representing police unions in negotiations and before the Nevada Legislature.  2-ER-290-96. As Dreher's resume indicates, Dreher was a police officer for the City of Reno for twenty-six years, and has been intimately involved in the Northern Nevada law enforcement community for decades as a member and former president of the Reno Police Protective Association. *Id* at 90.  Dreher's report opines as to the issue of fact as to the impact on Erwine's career by the statements and actions of Sheriff Trotter:

> Sheriff Trotter's memorandum tainted Erwine's background by labeling him a "liability." It is abnormal for a Nevada Law Enforcement department to indefinitely ban an applicant for any employment. In today's law enforcement world being labeled a "liability" and being terminated for that reason is a law enforcement career killer in my opinion.

2-ER-286.

///

///

///

**B.  Procedural History**

On February 24, 2022, Churchill County and Sheriff Trotter filed a Motion for Summary Judgment. 3-ER-302-16.  On March 4, 2022, Erwine filed a Response in Opposition to Defendant's Motion for Summary Judgment. 2-ER-39-64.  On March 6, 2022, Churchill County filed a Reply in support of its Motion for Summary Judgment. 2-ER-25-38.

**C.  Ruling Presented for Review**

On March 9, 2022, the Order on appeal was entered in this action granting summary judgment against Erwine. 1-ER-3-23.  The Order granted summary judgment against Erwine on his federal-law causes of action and dismissed his pendent state law claims without prejudice under 28 U.S.C. 1367(c)(3). *Id.* at 23.

Erwine appeals the District Court's rulings that no reasonable juror could find that Erwne was effectively excluded from employment in his chosen profession and that no reasonable juror could conclude that the statements of Sheriff Trotter impugned Erwine's character for honesty and morality. Erwine also appeals the District Court's decision to disregard the evidence presented by Erwine's expert, Ronald Dreher.

## IV.  SUMMARY OF THE ARGUMENT

Earlier in this case, when Erwine moved for summary judgment on his claims, the District Court issued an Order on September 7, 2021 in which it denied summary judgment in Erwine's favor and found that: "At least some of the statements in the memo are more than mere accusations of incompetence and go towards morality."  3-ER -365.

Six months later, on March 9, 2022, the District Court issued the Order subject to review by this Court in which the District Court ruled that "...no reasonable juror could conclude that the statements of Defendants impugned Plaintiff's character for honesty and morality." 1-ER-21.

The District Court explained this discrepancy in its Order in footnote 9 and explained that its assessment of the facts in the case differed in the two orders because of the standards at issue.  1-ER-20. Interpreting the facts in a light favorable to Erwine, a genuine issue of material fact exists as to the question of whether Trotter's statements about Erwine effectively excluded him from employment in his chosen profession and impugned Erwine's character for honesty and morality.

Facts are "stubborn things," and do not change to fit or not fit differing legal standards.

## V. STANDARD OF REVIEW

This Court reviews a grant of summary judgment under Federal Rule of Civil Procedure 56 *de novo*. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 1026. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (U.S. 1986). It is improper for a District Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

# VI. ARGUMENT

### a. Erwine was denied any due process under 14th Amendment despite the publication of stigmatizing accusations coincident with his termination from Churchill County

Erwine sued Sheriff Trotter in his individual capacity for his acts under color of Nevada law. 3-ER-394. "A public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510 (1971).

A terminated public employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is placed in his employee file and then published. Failure to provide a "name-clearing" hearing in such a circumstance is a violation of the due process clause; and "[A]n employee's liberty interest is implicated if a charge of improper conduct impairs the employee's reputation for honesty or morality." *Cox v.*

*Roskelley,* 359 F.3d 1105, 1112 (9th Cir. 2004) citing *Vanelli v. Reynolds School District No. 7*, 667 F.2d 773 (9th Cir. 1982).

Erwine has a right to due process to protect his reputation and to be free of official stigmatization - threatened stigmatization also requires due process. *Board of Regents v. Roth,* 408 U.S. 564, 569–70 quote at 573-574 (1972); *Goss v. Lopez,* 419 U.S. 565 (1975). While reputational harm alone does not trigger a right to due process, if coupled with a concurrent loss of employment, the 14th Amendment requires a "name clearing" hearing under the "stigma-plus" doctrine. *Paul v. Davis*, 424 U.S. 693, 712 (1976).

A hearing for a probationary or nontenured employee based on stigmatization is still required "if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Codd v. Velger*, 429 U.S. 624, 628, 97 S. Ct. 882 (1977) (per curiam).

An employee's liberty interest is also at issue if a charge of improper conduct impairs the employee's reputation for honesty or morality or if the charge effectively excluded, or caused a prolonged interruption of, Erwine's employment in the law enforcement field. *Vanelli v. Reynolds*

*School District No. 7*, 667 F.2d 773 (9th Cir. 1982). See also *Blantz v. Cal. Dep't of Corr. & Rehab*, 727 F.3d 917, 925 n.6 (9th Cir. 2013).

"The Constitution requires timely notice and a meaningful opportunity to be heard when a public employee is terminated on a contested charge of dishonesty if it imposes a stigma through public dissemination which forecloses his freedom to take advantage of other employment opportunities." *Llamas v. Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1131 (9th Cir. 2001).

In order to prevail on his claim, Erwine must show that (1) the accuracy of the charge of Churchill County against Erwine is contested; (2) there is some public disclosure of the charge against Erwine; and (3) the charge by Sheriff Trotter was made in connection with termination of Erwine's employment. *Mustafa v. Clark Cty. Sch. Dist.*, 157 F.3d 1169, 1179 (9th Cir. 1998).

In his October 10, 2016 Memorandum, Sheriff Trotter accused Erwine of "conduct unbecoming an officer," for conducting an "unauthorized investigation" and creating a "hidden word document" into the Beaulieu incident and taking sides with an inmate against his own agency. 2-ER-78-9. Sheriff Trotter also states that Erwine's actions are,

"unprofessional" and "discredits our agency and our profession." *Id* at 80. Sheriff Trotter is accusing Erwine of being disloyal to and deceptive by accusing him of an attempt to harm his own employer, i.e. to assist an inmate with suing his employer. *Id* at 79. The use of these terms by Sheriff Trotter inarguably calls into question the moral character and trustworthiness or honesty of Erwine.

Under NRS 239B.020(1), disclosure of Erwine's employment file at the Churchill County Sheriff's Office to any other public safety agency where he applied for employment was required to be provided if requested. Under *Cox v. Roskelley*, where state law requires disclosure of an employee file, merely placing stigmatizing information into an employee's file without due process constitutes publication. *Id.* at 1112.

The statements of Sheriff Trotter in the October 10, 2016 about Erwine were made "incident to" his termination from Churchill County, as it was authored on the same day but before Erwine was terminated, "As of the time of my writing this (October 10, 2016 at 1122 hours)," and unequivocally states, "Deputy Michael Erwine will be terminated today for failing to satisfactorily complete his probation." 2-ER-80. Even if this Court were to determine that Erwine's resignation from the Churchill

County's Sheriff's office were voluntary, the October 10, 2016 Memorandum clearly states that Erwine was fired for failing to complete his probation, and this is what was communicated to his potential future employers. Erwine's loss of employment was contemporaneous with and coincided with the harm to his reputation and the stigmatic injury arose as the result of his being terminated. *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).

In the District Court's first Order denying Erwine's Motion for Summary Judgment (3-ER-352-71), the District Court addressed the issue of the level of the stigmatizing statement, finding that Erwine was required to meet both parts of a two-part test to prove the statements at issue were stigmatizing: "To be sufficiently stigmatizing, it must 'impair[] a reputation for honesty or morality.' *Tibbetts v. Kulongoski*, 567 F.3d 529, 535–36 (9th Cir. 2009) (quoting *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988)). The statements must also be so severe as to 'effectively exclude the employee completely from [his] chosen profession.' *Blantz*, 727 F.3d at 925 (9th Cir. 2013)." 3-ER-365.

In footnote 6 of the decision in *Blantz* the Court clarified that:

Accusations of dishonesty or immorality are sufficiently stigmatizing to implicate a liberty interest, but less severe

accusations must be analyzed on a case-by-case basis, and allegations of mere incompetence or inability are not sufficient.

Id. at fn. 6. citations omitted.

In *Blantz*, the Plaintiff alleged that she was deprived of a liberty interest without due process because she was given negative job references that effectively barred her from any employment in a particular department with the California Department of Corrections and Rehabilitation *Id*. at 925. Blantz suffered no unconstitutional deprivation of liberty because she only alleged that she was "barred from employment with one division of the state government," and the Court found that she did not have a liberty interest in employment with a particular agency. See *Id*. at 926.

Erwine's case doesn't just involve negative job references after the fact of discharge or less severe accusations that must be analyzed on a case-by-case basis, but rather the placement of stigmatizing information in Erwine's file in connection with his termination that impugn his reputation for honesty or morality, which fall under a separate category of inquiry of 9th Circuit cases under *Cox v. Roskelley*, 359 F.3d 1105, 1113 (9th Cir. 2004) and *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018).

There are two primary ways that a liberty interest claim may be proven when an employer terminates a public employee: (1) where the employer makes a charge that might seriously damage the terminated employee's standing and associations in the community; or (2) the employer impose a stigma that effectively forecloses the freedom to take advantage of other opportunities. *Blantz*, 727 F.3d at 925 (9th Cir. 2013) see also *Llamas v. Butte*, 238 F.3d at 1128 (9th Cir. 2001).

Thus, if Erwine shows that Sheriff Trotter's statements involve "accusations of dishonesty or immorality" and Erwine was not afforded an opportunity for a name clearing hearing, then the inquiry ends there. Erwine is not required to also show that the statements were so severe as to effectively exclude him from his profession as explained in *Blantz*. The *Blantz* standard is required in cases where there is no accusation of the denial of a name clearing hearing and a plaintiff is claiming that the statements excluded them entirely from their profession. The District Court initally found in its Order denying the Plaintiff's Motion for Summary Judgment (EOR Vol. 3 at 349) that statements in Sheriff Trotter's Memoramdum are more than accusations of incompetence and go towards morality:

> At least some of the statements in the memo are more than mere accusations of incompetence and go towards morality. For example, the Trotter Memo describes Plaintiff as "unprofessional" and a "liability" and a "discredit" to the agency and appears to side with Deputy Jabines's version of the Mae's Incident that Plaintiff "snickered" as if he were engaging in reckless behavior with the taser in some sort of "play" in violation of "behavior standards." referring to the October 10, 2016 Memorandum.

3-ER-365.

Then, in the Order granting summary judgment in favor of Churchill County and Sheriff Trotter, the District Court reversed course made the opposite factual finding, i.e. that no reasonable juror could draw the same conclusion that the District Court drew in its previous order: "...the Court still holds summary judgment proper because no reasonable juror could conclude that the statements of Defendants impugned Plaintiff's character for honesty and morality." 1-ER-21.

When the District Court examined the "protracted interruption" element of *Blantz* in Erwine's motion for summary judgment it held: "Even though these may be protracted periods of unemployment, a juror could reasonably conclude that they were not caused by the Trotter Memo." 3-ER-366. Then when addressing this same issue in the in order granting summary judgment in favor of Churchill County, the district

court came to the conclusion that: "…no juror could reasonably find that the Trotter Memo or any other statement from defendants caused the "protracted interruptions" to employment in Plaintiff's chosen profession. *Blantz*, 727 F.3d at 925." 1-ER-17.

For the District Court to conclude that no reasonable juror could find a fact that the District Court previously found is facially unreasonable and inconsistent with the requirement at the summary judgment phase that a court view the facts in a light favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

### b. The District Court erred in disregarding the opinions of Erwine's Expert Ron Dreher

Erwine can still show "effective exclusion" under *Blantz*, i.e. he was rejected from several positions based on the statements in Sheriff Trotter's memorandum. In the expert report of Ron Dreher, who has extensive experience in law enforcement in Nevada, Dreher states that being labeled as a "liability," as Trotter did in his October 10, 2016, Memorandum, is a "career killer." 2-ER-286. Dreher also opined that, "On October 10, 2016, Erwine's career in law enforcement in Nevada, that he trained for and worked for ended." 2-ER-285. In its Order, the District Court found that Dreher's "grand conclusions" were "not reliable" because Dreher did not

describe the specific methodology for his conclusions. 1-ER-19. The District Court erred in making a credibility determination as to Dreher's testimony by resolving factual disputes and making credibility determinations at the summary judgment stage. *Zetwick v. Cty. of Yolo,* 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted). "The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." *Hoffa v. United States,* 385 U.S. 293, 294, 87 S. Ct. 408, 409 (1966).

Whether the statements at issue are "stigmatizing" is a question of fact that is within the purview of a jury to decide. *Campanelli v. Bockrath*, 100 F.3d 1476, 1480 (9th Cir. 1996). In order to show whether statements "effectively exclude" a person from employment based on subsequent employment, it is only logical to require that the subsequent employment decision be made with knowledge of the statements at issue. A reasonable jury could conclude that Erwine's rejection from employment from at least Washoe County and LVMPD was caused by the placement of the memorandum in his employee file due to the contents of the

memorandum itself, and Sheriff Trotter's statements to Olsen, leading Olsen to believe that Erwine was out to sabotage his own employer.

### c. Erwine's Monell claim against Churchill County should proceed along with his 14th Amendment Due Process claim against Sheriff Trotter

In its Order, the District Court declined to separately rule on Erwine's claim under *Monell v. Dep't. of Social Services of City of New York*, 436 U.S. 658, 690-691, 98 S. Ct. 2018, 2035-2036 (1978) (herinater *Monell*), finding that "the underlying merits are subject to summary judgment." 1-ER-3.

Churchill County is independently liable to Erwine under *Monell* because Erwine suffered a deprivation of his constitutional right to due process by Sheriff Trotter, who was the final policymaker for Churchill County for such decisions. Under *Monell*, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

Under NRS 248.040, Sheriffs in Nevada have authority to appoint and remove deputies, but a sheriff may not confer to a deputy, "…. policymaking authority for the office of the sheriff or the county by which the deputy sheriff is employed." The actions of Sheriff Trotter are a policy or custom of Churchill County. See *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989) (superseded on other grounds by statute), a policy or custom becomes official when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy. Local governments are liable for underlying 42 U.S.C. 1983 claims if the deprivation is the result of the agency's custom, policy, or practice. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006). Trotter, as Sheriff, deprived Erwine of his rights under the law, and acting under color of state law and was the officer with final policymaking authority over personnel matters within the Churchill County Sheriff's Office, including over the decision to fire Erwine. *Lytle v. Carl*, 382 F.3d 978, 981 (9th Cir.2004) and *Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013).

A "policy" is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy. *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir.2008). The "function" of firing Erwine was carried out by Sheriff Trotter. Churchill County is liable for the acts of Sheriff Trotter if these acts caused a constitutional violation, even if the constitutional violation occurs only once. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 & n.6 (1986). As such, if this Court reverses the District Court's decision to grant Sheriff Trotter summary judgment on Erwine's 14th Amendment due process claim, it should also reverse the District Court's decision granting summary judgment on Erwine's Monell claim against Churchill County.

## VII. CONCLUSION

Based on the foregoing, Erwine respectfully requests that the Court reverse the District Court's Order granting summary judgment to Sheriff Trotter and Churchill County on Erwine's federal claims and dismissal of his pendent state law claims, and remand this matter back to the District Court for further proceedings.

*///*

## VIII. STATEMENT OF RELATED CASES

This matter was previously the subject of an appeal before this Court in 9th Circuit Docket No. 19-16094, in which Erwine successfully appealed a decision by the District Court to enforce a settlement to which Erwine never finally agreed. The undersigned counsel is unaware of any other related cases.

Respectfully submitted this Jul 8, 2022

By:    Luke Busby, Esq.
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for Michael Erwine*

## XI. CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,473 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Google Docs, in Garamond 15-point font.

Respectfully submitted this Jul 8, 2022

By:___Luke Busby, Esq. _____
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for Michael Ervine*

## CERTIFICATE OF SERVICE

I hereby certify that on Jul 8, 2022 I electronically filed the

foregoing with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served

by the appellate CM/ECF system.

> Katherine F. Parks, Esq.
> Thorndal Armstrong
> 6590 S. McCarran Blvd. Suite B.
> Reno, NV 89509
> Attorney for Churchill County

Respectfully submitted this Jul 8, 2022

> By:__Luke Busby, Esq._____
> Luke Busby, Esq.
> Nevada State Bar No. 10319
> 316 California Ave.
> Reno, NV 89509
> 775-453-0112
> luke@lukeandrewbusbyltd.com
>
> *Attorney for Michael Ervine*