# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

\* \* \*

Case No. 22-15358

MICHAEL ERWINE,

Plaintiff-Appellant,

v.

CHURCHILL COUNTY, a political subdivision of the State of Nevada, and
BENJAMIN TROTTER, former Churchill County Sheriff,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

Case No.: 3-18-cv-00461-RCJ-WGC

## APPELLEES' ANSWERING BRIEF

Katherine F. Parks, Esq., Nevada Bar No. 6227
Christine R. Hotchkin Esq., Nevada Bar No. 15568
Thorndal Armstrong
Delk Balkenbush & Eisinger
6590 S. McCarran, Suite B
Reno, Nevada 89509
Phone: (775) 786-2882
kfp@thorndal.com
crh@thorndal.com
Attorneys for Defendants-Appellees

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………...…………………ii - iv

I.    STATEMENT OF ISSUES PRESENTED FOR REVIEW ...…………..…. 1

II.    STATEMENT OF THE CASE…………………………...…....……...1

III.    SUMMARY OF THE ARGUMENT………………………….………..9

IV.    ARGUMENT…………………………………………….………..9

    A.    STANDARD OF REVIEW…………………………………....9

    B.    THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CHURCHILL COUNTY AND TROTTER OF ERWINE'S FOURTEENTH AMENDMENT LIBERTY INTEREST CLAIM…………………………………. 11

        1.    Erwine Cannot Demonstrate that he was Effectively Excluded from his Chosen Field of Law Enforcement, or that he Suffered a Protracted Interruption of Gainful Employment in his Chosen Field of Law Enforcement, Because of the Actions of Trotter ……………………..….. 11

        2.    The District Court did not Err in Any Regard with Respect to its Treatment of the Opinions of Erwine's Sur-Rebuttal Expert Witness………………………………………….…21

        3.    Erwine's *Monell* Claim Against Churchill County is Indistinguishable from his Claim Against Trotter and the Same Legal Grounds Support the Affirmance of the District Court's Order Granting Summary Judgment in its Favor ………..…. 27

V.    CONCLUSION………………………………………………..28

CERTIFICATE OF COMPLAINCE……………………………………...29

## **TABLE OF AUTHORITIES**

### CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,*
    738 F.3d 960, 969 (9th Cir. 2013)……………………………...……….26

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 251, 106 S. Ct. 2505 (1986)……………………………….. 10

*Bd. of Regents of State Colleges v. Roth,*
    408 U.S. 564, 573, 92 S. Ct. 2701 (1972) …….....… 13, 14, 16, 17, 18, 19, 20

*Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,*
    727 F.3d 917, 925 (9th Cir. 2013)…………………………8, 13, 14, 15, 22

*Brady v. Gebbie,*
    859 F.2d 1543, 1552 (9th Cir. 1988)………………………………...……..14

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 323, 106 S. Ct. 2548 (1986)………………………...……….. 10

*Daubert v. Merrell Dow Pharms., Inc.,*
    509 U.S. 579, 597 (1993)……………………………………….……22, 25, 26

*First Nat. Bank of Ariz. v. Cities Service Co.,*
    391 U.S. 253, 288-289, 88 S. Ct. 1575 (1968)…………………...……….. 11

*Gray v. Union County Intermediate Educ. Dist.,*
    520 F.2d 805, 806 (9th Cir. 1975) ……………………………...………. 21

*Hyland v. Wonder,*
    972 F.2d 1129, 1141 (9th Cir. 1992) …………………………..……… 20, 21

*Jones v. Royal Administration Srvs, Inc.,*
    887 F.3d 443, 448 (9th Cir. 2018) ………………………..…………..…9, 19

*Lang v. Wal-Mart Stores East, L.P.,*
    813 F.3d 447, 460 (1st Cir. 2016)……………………………..…………... 11

ii

## TABLE OF AUTHORITIES (cont'd)

*Llamas v. Butte Cmty. Coll. Dist.*,
    238 F.3d 1123, 1128 (9th Cir. 2001), *as amended* (Mar. 14, 2001)…...15, 19

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658, 690 (1978)……………………………………...…...…….8, 27

*Paul v. Davis*,
    424 U.S. 693, 707–09 (1976)…………...……….…………...16, 17, 18, 20

*Quinn v. Shirey,* 293 F.3d 315, 321 (6th Cir. 2002); *cert denied,*
    537 U.S. 1019, 123 S. Ct. 538 (2002)……………….…………………….14

*Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 402, fn. 8, (5th Cir. 1989);
    *cert denied,* 498 U.S. 855, 111 S. Ct. 153 (1990) ………...……………… 14

*Stretten v. Wadsworth Veterans Hospital,*
    537 F.2d 361, 366 (9th Cir. 1976) …………..……………………………… 21

*Tibbetts v. Kulongoski,*
    567 F.3d 529, 535–36 (9th Cir. 2009)……………….……………….………14

*Trahan v. Wayfair Maine, LLC.,*
    957 F.3d 54, 62 (1st Cir. 2020)…………………………………...……….. 11

*Ulrich v. City and County of San Francisco,*
    308 F.3d 968, 982 (2002) ………………………………………… 17, 18

## STATUTES

NRS § 239B.020……………………………………………...……………13, 24

## RULES

F.R.C.P. 56 …………………………………………………………………… 10

Fed. R. Evid. 702……………………………………………………...……..25

## **TABLE OF AUTHORITIES (cont'd)**

<u>CONSTITUTIONAL PROVISIONS</u>

42 U.S.C. §1983………………………………………………..……...1, 7

# I.     STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred in granting summary judgment in favor of
   Benjamin Trotter on Erwine's Fourteenth Amendment liberty interest claim
   brought under 42 U.S.C. §1983.

2. Whether the district court erred in granting summary judgment in favor of
   Churchill County on Erwine's Fourteenth Amendment liberty interest claim
   brought under 42 U.S.C. §1983.

# II.     STATEMENT OF THE CASE

## Procedural History

Michael Erwine filed his complaint on September 28, 2018, in the United
States District Court for the District of Nevada asserting federal law claims against
them under 42 U.S.C. § 1983, as well as a number of state law claims. ER_440-
457. Churchill County and Trotter filed their answer on November 15, 2018.
ER_422-437. Erwine filed an amended complaint on August 6, 2021 which was
answered on September 15, 2021. ER_393-421; ER_372-392.  Churchill County
and Trotter filed a Motion for Summary Judgment on February 24, 2022. ER_302-
317. Erwine filed his response in opposition to the Motion for Summary Judgment
on March 4, 2022. ER_39-66. The County and Trotter filed their reply in support
of the Motion for Summary Judgment on March 6, 2022. ER_25-38. The district
court, the Honorable Robert C. Jones presiding, entered its order granting the

1

Motion for Summary Judgment on March 9, 2022. ER_3-23.

In its order granting summary judgment in favor of Churchill County and Trotter, the district court correctly determined that, based upon the uncontested facts, Erwine cannot make out a prima facie case of a violation of a liberty interest protected by the Fourteenth Amendment of the United States Constitution.

## **Underlying Facts**

Michael Erwine worked as a deputy sheriff at the Churchill County Sheriff's Office (located in Fallon, Nevada) from December 9, 2015, until October 10, 2016, when he resigned in lieu of termination. ER_359, ln. 17-21; ER_442, ln. 2-3. Erwine was a probationary employee at the time of his separation from employment with the Churchill County Sheriff's Office.[1] ER_454, ln. 16; ER_481; ER_004, ln. 14-16. Following Erwine's separation from employment, former Churchill County Sheriff Ben Trotter prepared a memorandum dated October 10, 2016, concerning the reasons for his decision to terminate Erwine's employment during his probationary period. ER_078-080. The memorandum was placed in his personnel file but was not shown to Erwine. ER_357, ln. 15. In December of 2016, Churchill County received a request from the Washoe County Sheriff's Office located in Reno, Nevada, for a copy of Erwine's personnel file,

---

[1] Erwine acknowledged that issues were raised during his probationary period by his superior officers that he had problems with accountability and taking responsibility for his own actions.  ER_004.

2

accompanied by an authorization for the release of information to that agency signed by Erwine. ER_358, ln. 23-24; ER_407, ln. 5-9; ER_495-496. Churchill County complied with this request and sent Erwine's personnel file, which included the memorandum at issue, to the Washoe County Sheriff's Office. ER_495-496.

Following his separation from employment with Churchill County, Erwine first went to work as a security guard between April of 2017 and January of 2018. ER_329, ln. 5-20. Erwine was then hired as a police officer with the Pyramid Lake Paiute Tribe for whom he worked from January 8, 2018, through April 4, 2018. ER_327, ln. 20-25; ER_328, ln. 6-10. On or about April 4, 2018, Erwine was terminated by the Pyramid Lake Paiute Tribe for failure to pass his probationary period. ER_328, ln. 11-16. Thereafter, Erwine again worked as a security guard from June 28, 2018, through February 27, 2019. ER_ 323, ln. 3-6. In November of 2019, Erwine became re-employed as a law enforcement officer with the Washoe Tribe of Nevada and California (a job he was offered on July 10, 2019) and he remained employed with that agency as of the time the district court granted summary judgment in favor of Churchill County and Trotter. ER_324, ln. 11-25; ER_325, ln. 1-11.

During his deposition, Erwine testified that his position with the Washoe Tribe is in the field of law enforcement in which he desires to be employed.

3

ER_322 at ln. 13-14. He further testified that, in his position as a police officer with the Washoe Tribe, his job duties included, "everything you can imagine a general law enforcement officer handles." ER_ 320, ln. 17-25. Similarly, although Erwine did not pass his probationary period with the Pyramid Lake Paiute Tribe, his duties with that agency included, "everything from minor traffic enforcement to in-depth investigations of crimes." ER_325, ln. 23-25; ER_326 at ln. 1. As such, there was and is no issue of material fact as to whether Erwine obtained employment in his chosen field after his separation from employment with Churchill County.

Erwine had been unsuccessful in his efforts to gain employment in law enforcement prior to being hired by Churchill County in December of 2015. ER_330-336. Erwine was convicted of driving under the influence of alcohol in June of 2011. ER_333, ln. 4-10; ER_353, ln. 7-9.  At the time of his arrest, Erwine was a part time volunteer deputy with the Carson City Sheriff's Office, a position from which he resigned shortly after his arrest while the criminal case was proceeding. ER_004, ln. 10-13. Erwine applied for employment with the Washoe Tribal Police in 2011, the Lyon County Sheriff's Office and the Fallon Tribal Police in April of 2015, the Sparks Police Department in June of 2015, and the Washoe County Sheriff's Office in October of 2015. *Id.* at ln. 4-7; ER_330-331; ER_333-334; ER_336.  Erwine acknowledged that he disclosed the fact that he

was arrested for driving under the influence to all law enforcement agencies to which he applied and that his difficulty securing employment in law enforcement may have been due to this issue. ER_004, ln. 8-10; ER_333.

After his separation from employment with Churchill County, Erwine applied to a number of other law enforcement agencies which did not offer him employment, including the Washoe County Sheriff's Office, the Carson City Department of Alternative Sentencing, the Douglas County Sheriff's Office, the North Las Vegas Police Department, the Reno Police Department, and the Las Vegas Metropolitan Police Department. ER_498; ER_502; ER_504; ER_506; ER_508; ER_510; ER_008 at ln. 16-24; ER_009 at ln. 1-14. Erwine contends that he was not offered a job with these agencies based upon allegedly "stigmatizing statements" contained in the memorandum of Trotter. At the conclusion of all discovery in this case, the only thing the evidence showed was that Churchill County provided the Washoe County Sheriff's Office with a copy of Erwine's personnel file, including the memorandum, and that then Sheriff Trotter spoke with someone from the Las Vegas Metropolitan Police Department about Erwine following his separation from employment on October 10, 2016.

The undisputed evidence also demonstrates that other law enforcement agencies which rejected Erwine from employment after October 10, 2016, *did not* receive a copy of the Trotter memorandum from Churchill County. In connection

5

with this lawsuit, the Reno Police Department and the North Las Vegas Police Department were issued subpoenas duces tecum demanding production of the following documents: "[t]he complete employment history file of Michael Erwine as it was provided to your office by Churchill County Sheriff's Office. This includes any and all information and documentation regarding preemployment background investigations, employment information and any information regarding reprimands." ER_344-346; ER_439-351. Both responded that they had no records responsive to this request. ER_343; ER_348. Discovery in this case adduced evidence only that the Washoe County Sheriff's Office received the Trotter memorandum and that Trotter spoke with someone from the Las Vegas Metropolitan Police Department regarding Erwine.

Erwine contends that he was terminated by a "corrupt rural sheriff's office" because he recorded information about mistreatment of an inmate. *See*, Appellant's Opening Brief at p. 3. While Churchill County and Trotter sharply dispute Erwine's characterization of the events involving Inmate Beaulieu and Inmate Maes, events which Erwine spends an inordinate amount of time detailing in his Opening Brief, Erwine's interaction with these inmates in the days leading up to his separation from employment with Churchill County is irrelevant to the issues on appeal. The contents of the Trotter memorandum are not in dispute. The first page of the memorandum contains a factual summary of the interactions between

6

Jail detention deputies and Inmate Beaulieu. ER_078. There is not a single statement on page one which could be deemed "stigmatizing." The first paragraph of page two of the memorandum contains additional statements regarding the situation involving Beaulieu. ER_079. Thereafter, Trotter set forth his "Items of Concern" which included his comment that Erwine, as a probationary employee, did not have the authority to conduct his own personnel evaluations and his concern that Erwine appeared to be siding with an inmate over his own agency. *Id*. With respect to the Beaulieu incident, Trotter commented that the, "proper thing for Erwine to have done would have been to report his concerns to a supervisor and, if this did not seem right or a valid avenue, to report these concerns to an administrator." *Id*. Nothing about these statements can be defined as "stigmatizing" within the meaning of the Fourteenth Amendment.

The remainder of page two of Trotter's memorandum discusses an incident involving Inmate Maes in which it was reported by another deputy that Erwine committed an unjustified use of force. *Id*. While Erwine disputes that he made an inappropriate use of his taser with respect to an inmate who was kneeling on the floor at the time, comments about whether or not the force at issue was justified, or whether Erwine violated policy by engaging in conduct unbecoming an officer, are not "stigmatizing." *Id*.

The last page of Trotter's memorandum includes additional factual

statements regarding the Maes incident, after which Trotter outlined his "Items of Concern." ER_080. In same, Trotter stated his belief that Erwine's actions constituted "unprofessional behavior" that could discredit the Sheriff's Office and the law enforcement profession and that Erwine violated the Sheriff's Office's taser policy and "behavior standards." *Id*. While certainly critical of Erwine's conduct, these statements do not implicate Erwine's honesty or moral turpitude and are, rather, comments on what Trotter deemed to have been Erwine's violation of policy and neglect of duty.

Based upon these undisputed facts, the district court held that Churchill County and Trotter were entitled to judgment as a matter of law of Erwine's Fourteenth Amendment liberty interest claim. ER_021, ln. 13-18. With respect to the claim against Trotter, the district court found the factual circumstances of this case indistinguishable from those present in *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.,* 727 F.3d 917 (9th Cir. 2013). ER_013, ln. 18-20. Thus, the district court held that Erwine's failure to have demonstrated that he was effectively excluded from his chosen profession, or that he suffered a protracted interruption of employment in his chosen profession, is fatal to his Fourteenth Amendment liberty interest claim. ER_013, ln. 16-24; ER_017, ln. 1-6. As for the *Monell* claim brought against Churchill County, it is based entirely upon the actions of Trotter as the final policy-making official for the Sheriff's Office and

the district court correctly held that Churchill County is entitled to summary judgment on the same grounds. ER_003, ln. 21-22.

## III.   SUMMARY OF THE ARGUMENT

The district court did not err when it concluded that Churchill County and Trotter are entitled to judgment in their favor of Erwine's Fourteenth Amendment liberty interest claim.  Erwine's claim as set forth in his amended complaint is the very definition of a "stigma-plus" liberty interest claim.  The district court correctly held that Erwine cannot make out a prima facie case under this species of a Fourteenth Amendment claim because the undisputed evidence demonstrates that he was neither effectively excluded from his chosen profession, nor suffered a prolonged interruption from employment in his chosen profession, as a result of the actions of Trotter.  It is undisputed that Erwine obtained employment as a law enforcement officer within a relatively short time after his separation from employment with Churchill County and, in fact, it is undisputed that Erwine was so employed at the time the district court entered summary judgment in favor of Churchill County and Trotter.

## IV.  ARGUMENT

## A.   <u>STANDARD OF REVIEW</u>

On appeal, the Court reviews *de novo* a district court's grant of summary judgment.  *See, Jones v. Royal Administration Srvs, Inc.*, 887 F.3d 443, 448 (9th

Cir. 2018). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is always proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251, 106 S. Ct. 2505 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of any genuine issue of material fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, *supra.* at 248. Further, the opposing party cannot rest on mere allegations of facts without "any significant probative evidence tending to support the complaint." *Id.* at 249. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in favor of that party.

10

*See, First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S. Ct. 1575 (1968). Speculation, unsupported by facts, is manifestly inadequate to stave off summary judgment. *See, Trahan v. Wayfair Maine, LLC.,* 957 F.3d 54, 62 (1st Cir. 2020). "A party cannot ward off summary judgment with proffers that depend on arrant speculation, optimistic surmise or farfetched inference." *Lang v. Wal-Mart Stores East, L.P.,* 813 F.3d 447, 460 (1st Cir. 2016)(internal citation omitted).

The material facts in this case, after nearly four years of litigation, are not in dispute. Erwine cannot make out a prima facie case under a Fourteenth Amendment liberty interest theory and the district court's order should be affirmed.

**B. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CHURCHILL COUNTY AND TROTTER OF ERWINE'S FOURTEENTH AMENDMENT LIBERTY INTEREST CLAIM.**

**1. Erwine Cannot Demonstrate that he was Effectively Excluded from his Chosen Field of Law Enforcement, or that he Suffered a Protracted Interruption of Gainful Employment in his Chosen Field of Law Enforcement, Because of the Actions of Trotter.**

It is undisputed in this case that Erwine was a probationary employee at the time of his separation from employment with Churchill County. This is an important fact which is largely overlooked by Erwine in his Opening Brief. As a probationary employee, Erwine had no protected property interest in continued employment with Churchill County and Erwine does not so allege in this case.

11

Because of this fact, Erwine must, with respect to his Fourteenth Amendment claim, meet the special test carved out by the courts under a substantive liberty interest due process theory. In this regard, it is Mr. Erwine who deliberately chose the legal theory under which he has been proceeding in this case since September of 2018. The allegation in Erwine's amended complaint is that the Trotter memorandum containing allegedly false and stigmatizing statements was improperly placed in his personnel file and was disclosed to all law enforcement agencies to which he applied after October 10, 2016, thereby causing those agencies to reject him. ER_411-412. The manner in which Erwine pled his federal claim is the very definition of a stigma-plus liberty interest claim. Having chosen to proceed on this very particular variety of Fourteenth Amendment liberty interest claim, Erwine must meet the prima facie elements of same. He cannot do so for the reason clearly articulated by the district court in its order, that being that Erwine cannot demonstrate that the Trotter memorandum, or the actions of Trotter, foreclosed his freedom to take advantage of other employment opportunities. It is uncontroverted that Erwine obtained employment in his chosen profession of law enforcement after his separation from employment with Churchill County. ER_324, ln. 11-25; ER_325, ln. 1-11; ER_327, ln. 20-25. As both this Court and the United States Supreme Court have held, there can be no substantive due process violation under the Fourteenth Amendment unless allegedly stigmatizing

12

statements foreclose a litigant's freedom to take advantage of other employment opportunities. *See, Blantz, supra.* at 925; *see also, Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S. Ct. 2701 (1972).

This is not to suggest that Erwine has, or had, no potential remedy for the *alleged* misdeeds discussed in his Opening Brief. In his amended complaint, Erwine brought state law claims against Churchill County and Trotter, including claims for defamation, intentional interference with prospective employment opportunities, and tortious constructive discharge. ER_416-420. In addition, Nevada state law provided Erwine with a very specific remedy to address his claim that he was denied the opportunity for a name clearing hearing in the form of provisions of the Peace Officer Bill of Rights contained in Chapter 289 of the Nevada Revised Statutes. NRS 289.120 explicitly provides a remedy to Nevada peace officers who claim to have been subjected to a violation of the Peace Officer Bill of Rights in the form of an action in state court.[2] The statute empowers the state court to order injunctive or other extraordinary relief (such as a name-clearing hearing) if a violation of Chapter 289 is found.[3] These state law claims do not

---

[2] In his amended complaint, Erwine contends that he was entitled to a name-clearing hearing by other provisions of the Peace Officer Bill of Rights. ER_405.

[3] Erwine did not request a name-clearing hearing from Churchill County after his separation from employment. ER_340-341. The state deprives an employee of a liberty interest only when it denies his request for an opportunity to contest the charges and clear his name and failure to request a name-clearing hearing is fatal to

require a plaintiff to prove that the actions of the government foreclosed future employment opportunities as an element of his or her prima facie case.

Erwine also could have looked to other constitutional prohibitions under the circumstances of this case to seek redress of his grievances against Churchill County and Trotter but did not.  Having elected to proceed, in terms of his §1983 claim, under the very particular stigma-plus liberty interest claim, Erwine must meet the prima facie elements of such a claim as imposed by this Court and others. He cannot do so and the district court's order should be affirmed.

Under a liberty interest claim of the type pled by Erwine, he must show that he was terminated from his employment in conjunction with a stigmatizing statement. *Roth, supra.* at 573.  Erwine must prove these elements and, in addition, must show that the statement was false and, to be considered sufficiently stigmatizing, that it impaired his reputation for honesty and morality. *See, Tibbetts v. Kulongoski,* 567 F.3d 529, 535-36 (9th Cir. 2009) and *Brady v. Gebbie,* 859 F.2d 1543, 1552 (9th Cir. 1988).  Critical to the issue on appeal, Erwine must show that the stigmatizing statements were so severe as, "to effectively exclude" him "completely from [his] chosen profession." *Blantz, supra.* at 925.  This Court has

---

a liberty interest claim of the type at issue in this case.  *See, Quinn v. Shirey,* 293 F.3d 315, 321 (6th Cir. 2002); *cert denied,* 537 U.S. 1019, 123 S. Ct. 538 (2002); *Rosenstein v. City of Dallas, Tex.*, 876 F.2d 392, 402, fn. 8, (5th Cir. 1989); *cert denied,* 498 U.S. 855, 111 S. Ct. 153 (1990).

held that this element of a stigma-plus liberty interest claim is an essential one. *Id.*
Stigmatizing statements that merely cause, "reduced economic returns and
diminished prestige, but not permanent exclusion from, or protracted interruption
of, gainful employment within the trade or profession," do not constitute a
deprivation of liberty." *Id.* While the due process clause protects a generalized
right to choose one's field of private employment, the Courts have consistently
held that people do not have a liberty interest in a specific employer. *See, Llamas
v. Butte Cmty. Coll. Dist.,* 238 F.3d 1123, 1128 (9th Cir. 2001).

In its order granting summary judgment in favor of Churchill County and
Trotter, the district court correctly concluded that the undisputed facts in this case
compel judgment in favor of the Appellees as a matter of law. By Erwine's own
admission, he obtained employment as a law enforcement officer with the Pyramid
Lake Paiute Tribe on January 8, 2018. ER_327, ln. 20-25. After he was
terminated by that agency for failure to have passed his probationary period on or
about April 4, 2018, Erwine was hired as a law enforcement officer with the
Washoe Tribe of Nevada and California in November of 2019. ER_324, ln. 11-25;
ER_325, ln. 1-11. Erwine was so employed at the time the district court issued its
order on the motion for summary judgment at issue. ER_320, ln. 9-16.

Erwine's claim, both at the district court and now on appeal, that he can
proceed with a liberty interest claim only upon a showing that the statements in the

15

Trotter memorandum implicate his "honesty and morality," without evidence that the statements impacted his ability to take advantage of other employment opportunities in his field, is not the law. The issue of whether the character of the statements is such as to relate to Erwine's honesty or morality goes to the *stigmatizing* element of the test for violation of a liberty interest and the United States Supreme Court has emphasized that harm to one's reputation alone is not protected by the Fourteenth Amendment. *See, Paul v. Davis,* 424 U.S. 693, 711, 96 S. Ct. 1155 (1976) and *Roth, supra.* at 570 (the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property).

In this case, Erwine had no protected property interest in continued employment with the Sheriff's Office by virtue of his probationary status at the time of his separation from employment. As such, the only liberty interest upon which Erwine can proceed on his federal claim is the right to engage in his chosen field. *Roth, supra.* at 572-573. More specifically, Erwine's liberty interest claim can *only* be based upon the legal theory articulated by the Supreme Court in *Roth* that a plaintiff who has no property interest in continued employment may nonetheless be entitled under the Fourteenth Amendment to a hearing if his termination is accomplished by "any charge against him that might seriously damage his standing and reputation in the community or imposed on him a stigma

16

or other disability that *foreclosed his freedom to take advantage of other*

*employment opportunities*." *Id.* at 573 (emphasis added). As articulated by this

Court in *Ulrich v. City and County of San Francisco*, "[o]ut of concern that the

Fourteenth Amendment not become 'a font of tort law to be superimposed upon

whatever systems may already be administered by the states,' soon after *Roth* the

Court held that injury to reputation alone is not sufficient to establish a deprivation

of a liberty interest protected by the Constitution." 308 F.3d 968, 982 (2002);

*citing, Paul v. Davis,* 424 U.S. 693, 701, 711, 96 S. Ct. 1155 (1976).[4] As further

articulated by this Court, "[t]he rule in *Paul* has come to be known as the 'stigma-

plus' test for establishing deprivation of liberty based on governmental

defamation." *Id.* at 982. The stigma-plus test requires proof of public disclosure

of a stigmatizing statement by the government, the accuracy of which is contested,

*plus* the denial of a tangible interest. *Id.* Only where these elements exist is a

plaintiff entitled to notice and an opportunity to clear his name. *Id.*

    Erwine's contention on appeal that he need only show that the statements in

the Trotter memorandum, or any statements attributed to Trotter, implicate his

honesty or morality is directly in conflict with the precedent of this Court and the

---

[4]Here, the state law remedies already in place include the tort claims pled by
Erwine in his amended complaint. While Erwine is free to pursue such claims
against Churchill County and Trotter, he should not be permitted to proceed under
the Fourteenth Amendment without evidence that he was deprived of a tangible
interest; i.e. the right to engage in the occupation of his choosing.

Supreme Court that injury to reputation alone is insufficient to establish a liberty interest. *See, Paul, supra.* at 711; *see also, Ulrich, supra.* at 982. Erwine must prove the denial of some other tangible interest protected by the concept of liberty under the Fourteenth Amendment. Erwine had no protected property interest in continued employment with the Sheriff's Office and, as such, the only right protected by the liberty interest of the Fourteenth Amendment upon which Erwine can possibly proceed is his right to engage in the profession of his choosing. *See, Roth, supra.* at 573 (the liberty interest guaranteed by the Fourteenth Amendment includes such rights as the freedom from bodily restraints, the right to contract, the right to marry and raise children, and the right to engage in the common occupations of life). Erwine's suggestion that he is *only* required to prove that the statements at issue implicated his "honesty or morality" leap frogs the requirement that he show that one of the rights guaranteed him under the substantive due process of the Fourteenth Amendment has been violated at all.

It is uncontroverted in this case that Erwine obtained employment as a law enforcement officer (twice) in a relatively short period of time after his separation from employment with Churchill County. ER_320, ln. 9-16; ER_324, ln. 11-25; ER_325, ln. 1-11. Based upon this uncontroverted fact, Erwine cannot demonstrate that he has been foreclosed from taking advantage of employment opportunities in his chosen field. The Fourteenth Amendment does not guarantee

18

Erwine's right to work for any particular employer, such as the Las Vegas Metropolitan Police Department or the Washoe County Sheriff's Office. *See, Llamas, supra.* at 1128. Rather, the due process clause protects a generalized right to choose one's field. *Id.* The fact that Erwine obtained employment as a law enforcement officer after his separation from employment with Churchill County is fatal to his Fourteenth Amendment claim and the district court correctly granted summary judgment in favor of Trotter on that ground.

Erwine's contention that the Court must reverse the district court's order based upon statements of the district court in two separate orders on summary judgment motions filed by the parties regarding the character of the statements in the Trotter memorandum is wholly without merit. First, on appeal, this Court will evaluate the issues based upon a *de novo* review. *See, Jones, supra.* at 448. Second, whether the statements in the Trotter memorandum implicate Erwine's honesty or morality goes only to the question of whether the statements are sufficiently stigmatizing in the first instance to implicate a Fourteenth Amendment liberty interest. To accept Erwine's argument that he need only show that the statements in question implicate his honesty or morality would be to disregard the precedent set by the Supreme Court in *Roth* that a plaintiff proceeding on a liberty interest claim under the Fourteenth Amendment must show that the statements in question "foreclosed his freedom to take advantage of other employment

19

opportunities." *Roth, supra.* at 573. To accept Erwine's argument that he need only show that the statements in question implicate his honesty or morality would be to endorse the theory that injury to reputation alone is sufficient to establish a liberty interest protected by the Constitution. This is not the law. *See, Paul, supra.* at 711. The substantive due process clause protects, among other things, a person's right to "engage in the common occupations of life." *Hyland v. Wonder,* 972 F.2d 1129, 1141 (9th Cir. 1992); *citing, Roth, supra.* at 572. It is uncontroverted in this case that no statements made by, or attributed to, Trotter, denied Erwine the right to engage in the common occupations of life or foreclosed him from taking advantage of other employment opportunities in his chosen field of law enforcement, as Erwine was employed as a law enforcement officer at the time the district court issued its order granting summary judgment in favor of Churchill County and Trotter.

Based upon this fundamental flaw in Erwine's liberty interest claim, the district court's order must be affirmed regardless of how the statements in the Trotter memorandum, or any statements attributed to Trotter by Erwine, are characterized. Notwithstanding, the district court did not err in concluding that the statements at issue did not implicate the Fourteenth Amendment, as these statements, "are not the types of charges of immorality, or dishonesty that can cripple an individual's ability to earn a living" so as to trigger a liberty interest

claim. *Hyland, supra.* at 1141. Charges of incompetence, neglect of duty, malfeasance of office, mismanagement, and failure to meet a specific level of management are insufficient to implicate a liberty interest. *See, Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 366 (9th Cir. 1976); *Gray v. Union County Intermediate Educ. Dist.,* 520 F.2d 805, 806 (9th Cir. 1975).

Other than factual statements related to the Beaulieu and Maes incidents, the statements contained in Trotter's memorandum include statements that Erwine acted in an unprofessional manner that could discredit the Sheriff's Office, that he violated Sheriff's Office policy and behavior standards, and that he acted in a manner unbecoming a law enforcement officer. ER_481-482. Regardless of the meaning Erwine would assign to the statements at issue, none whatsoever suggest that Erwine lied or that Erwine engaged in amoral conduct. Thus, they are not the type of statements which implicate the liberty interest of the Fourteenth Amendment at all. *Hyland, supra.* at 1142. This fact provides further grounds for the Court to affirm the order of the district court granting summary judgment in favor of Churchill County and Trotter.

**2.    The District Court did not Err in Any Regard with Respect to its Treatment of the Opinions of Erwine's Sur-Rebuttal Expert Witness.**

Any argument that the district court's order should be reversed based at all on treatment by the district court of the opinions of Erwine's sur-rebuttal expert,

Ronald Dreher, should be summarily rejected. Erwine's argument that the district court made improper credibility determinations about this expert is without merit. The district court analyzed the value, or lack thereof, of Dreher's opinions and conclusions with reference to *Daubert* and its progeny. Dreher's opinions were and are completely undermined by the fact that Erwine obtained work as a law enforcement officer following his separation from employment with Churchill County and was, in fact, working as a law enforcement officer at the very time Dreher issued his expert witness report. ER_320, ln. 9-16.

In what appears to be an acknowledgement that he must meet all of the elements of a stigma-plus claim as laid out by this Court in *Blantz*, Erwine contends that he *can* demonstrate that he suffered "effective exclusion" from his chosen profession of law enforcement through the testimony of Dreher. Dreher opined that Erwine had been, essentially, blacklisted from employment in the field of law enforcement due to the Trotter memorandum. ER_281. More specifically, Dreher opined in his report, without any foundation whatsoever, that Erwine was "labeled as a liability by Sheriff Trotter" and, as a result, Erwine's chances of being employed by the state or a local government as a police officer is "almost zero." ER_281.

The most glaring problem with Dreher's opinion, as well as Erwine's reliance upon same in opposition to the Appellees' motion for summary judgment,

is that Erwine *became employed* as a law enforcement officer after his separation from employment with Churchill County.  ER_320, ln. 9-16; ER_324, ln. 11-25; ER_325, ln. 1-11.  This uncontroverted fact undermines any opinion to the contrary asserted by Dreher in this case.

In addition, and as correctly held by the district court, Dreher's opinion that Erwine was somehow turned down by every state and/or local law enforcement agency with which he applied after his separation from employment from Churchill County *because of* the Trotter memorandum, or any statements attributed to Trotter, is and was wholly unreliable.  Dreher makes conclusory statements in his expert report to the effect that, because the Washoe County Sheriff's Office was provided the Trotter memorandum, "there is no doubt in my mind that the other law enforcement agencies that Mr. Erwine applied for either had the same copies of those memorandums or had been verbally advised of those memorandums by Sheriff Trotter or his representatives."  ER_281.

The problem with Dreher's opinion in this regard, and one of the bases upon which the district court found his opinions to be unreliable, is that this conclusory statement runs contrary to the evidence in the case.  The undisputed evidence is that the Washoe County Sheriff's Office requested a copy of Erwine's personnel file from Churchill County and that a representative of LVMPD spoke with Trotter after Erwine applied to that agency.  ER_491-492; ER_563-566.  From this

23

evidence, Dreher speculates that every other law enforcement agency to which Erwine applied after October 10, 2016, rejected him because of information received from Churchill County. Pursuant to Section 239B.020 of the Nevada Revised Statutes, an employer such as Churchill County is required to provide a public safety agency with certain information about an applicant for employment upon request. Such a request must be accompanied by an authorization for the release of such information from the applicant. *See,* NRS 239B.020(1)(b). The statute *does not* permit a law enforcement agency with whom an applicant applies to share such information with other prospective employers and there is no evidence in this case to support Dreher's wild speculation that every other law enforcement agency to which Erwine applied rejected him because of information contained in the Trotter memorandum. In fact, the evidence adduced during discovery in the case demonstrates that the opposite is true. Erwine was rejected from employment by the Reno Police Department and the North Las Vegas Police Department, both of which were served with subpoenas duces tecum seeking production of the following documents: "[t]he complete employment history file of Michael Erwine as it was provided to your office by the Churchill County Sheriff's Office. This includes any and all information and documentation regarding preemployment background investigations, employment information and any information regarding reprimands." ER_344-346; 349-351. Both agencies

24

responded to the subpoenas by stating that they had no such documentation regarding Erwine.  ER_343; ER_348.

Contrary to Erwine's argument in his Opening Brief, the district court did not make an improper "credibility determination" about Dreher or his opinions or conclusions.  Rather, the district court correctly held that Dreher's opinion was based upon no methodology whatsoever and, as such, that his opinions and "grand conclusions" were unreliable.  ER_019.

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The Supreme Court has explained that, "the Rules of Evidence—especially Rule 702—do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786 (1993). This Court has stated that:

25

Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.' The Daubert reliability requirement is flexible and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. The list of factors was meant to be helpful, not definitive and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case.

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.,* 738 F.3d 960, 969 (9th Cir. 2013) (internal citations omitted).

In this case, Dreher's conclusions were correctly found to have been based upon not just unreliable methodology, but no methodology at all. Dreher simply points to his years representing police unions during his law enforcement career as the basis for his sweeping conclusion that all of the law enforcement agencies to which Erwine applied after October 10, 2016, must have received copies of the Trotter memorandum. ER_281. In fact, according to his expert report, Dreher did not even review or consider the responses to the subpoenas duces tecum of the Reno Police Department or the North Las Vegas Police Department which indicate that they *did not* receive the Trotter memorandum in connection with Erwine's applications for employment with those agencies. ER_272-273. Dreher's opinions and conclusions are devoid of foundation, are based on no methodology whatsoever, and the district court did not err in granting summary judgment in favor of Trotter and Churchill County notwithstanding any opinions offered by

26

Dreher.

Further, the district court correctly concluded that, even assuming the accuracy of Dreher's assertions that employment as a tribal police officer is somehow not akin to employment in Erwine's chosen profession, this would amount to, at most, evidence of reduced economic returns, as opposed to effective exclusion from Erwine's chosen profession. ER_014. Such a showing is insufficient to constitute violation of a liberty interest protected by the Fourteenth Amendment and nothing about the district court's treatment of the opinions and conclusions of Ronald Dreher justifies reversal of the district court's order granting judgment in favor of Trotter and Churchill County as a matter of law.

3. **Erwine's *Monell* Claim Against Churchill County is Indistinguishable from his Claim Against Trotter and the Same Legal Grounds Support the Affirmance of the District Court's Order Granting Summary Judgment in its Favor.**

The district court did not err in granting summary judgment in favor of Churchill County on Erwine's Fourteenth Amendment *Monell* claim, as Erwine's claim in this regard is based solely on the argument that Churchill County is liable for the actions of a policy-making official, former Sheriff Trotter. Thus, this claim is indistinguishable from the Fourteenth Amendment claim brought against Trotter individually, it is subject to summary judgment based upon all of the arguments discussed herein, and the district court's order granting summary judgment in favor of Churchill County should be affirmed.

## V.   CONCLUSION

Based upon all of the foregoing, Churchill County and Ben Trotter respectfully request that the district court's order granting summary judgment in their favor be affirmed.

Respectfully submitted this 16th day of September, 2022.

THORNDAL ARMSTRONG
 DELK BALKENBUSH & EISINGER

By:   */s/ Katherine Parks*
      KATHERINE F. PARKS, ESQ.
      Nevada Bar No. 6227
      CHRISTINE R. HOTCHKIN, ESQ.
      Nevada Bar No. 15568
      6590 S. McCarran Blvd., Suite B
      Reno, Nevada 89509
      Attorneys for Appellees
      Churchill County and Ben Trotter

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(5)(A) and Circuit

Rule 32-1, I hereby certify that the attached is proportionately spaced, has a

typeface of 14-point and contains 6,547 words, excluding the portions exempted by

Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

Respectfully submitted this 16th day of September, 2022.

THORNDAL ARMSTRONG
DELK BALKENBUSH & EISINGER


By: _/s/ Katherine Parks_
KATHERINE F. PARKS, ESQ.
Nevada Bar No. 6227
CHRISTINE R. HOTCHKIN, ESQ.
Nevada Bar No. 15568
6590 S. McCarran Blvd., Suite B
Reno, Nevada 89509
Attorneys for Appellees
Churchill County and Ben Trotter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am an employee of Thorndal Armstrong Delk Balkenbush & Eisinger, and that on the 16th day of September, 2022, I electronically filed the foregoing **APPELLEES' ANSWERING BRIEF** with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I further certify that all parties in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Luke Busby, Esq.
316 California Ave.
Reno, NV 89509
luke@lukeandrewbusbyltd.com
Attorney for Appellant

*/ s /   Laura Bautista*
An employee of Thorndal Armstrong
Delk Balkenbush & Eisinger