# IN THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### Case No.: 22-15358

MICHAEL ERWINE,

   Plaintiff-Appellant,

   vs.

CHURCHILL COUNTY, a political
subdivision of the State of Nevada, and
BENJAMIN TROTTER, former Churchill
County Sheriff,

   Defendant-Appellees.

_____/

## REPLY BRIEF OF PLAINTIFF-APPELLANT

## MICHAEL ERWINE

Appeal from the Judgment of the United States District Court
District of Nevada

Case No. 3-18-cv-00461-RCJ-WGC

Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

# **TABLE OF CONTENTS**

I.    INTRODUCTION……………………………………….... 1

II.   ARGUMENT..………………………………………...… 3

   A. The facts: disputed issues of fact pervade this case……..….. 3

      1. Erwine presented declarations from the Pyramid Lake
         Paiute Tribe and the Washoe Tribe of Nevada and
         California showing they were unaware of Trotter's
         Memorandum…………………………………..……… 3

      2. Churchill County presented no evidence that Erwine's
         other employers ever saw the Trotter Memorandum... 4

      3. Erwine was qualified to be a cop when Churchill
         County hired Erwine to be a cop………..……….....… 5

      4. Churchill County and Sheriff Trotter fail to dispute
         Erwine's account of what happened with inmates
         Beaulieu and Maes at the Churchill County Jail…..….. 6

   B. The law: Churchill County and Sheriff Trotter misstate the
      law as to what constitutes a due process claim based on a
      deprivation of a liberty interest in future employment…...… 8

      1. There is sufficient evidence for a reasonable jury to
         conclude that Trotter's statements about Erwine were
         stigmatizing…………………..……………....…… 8

      2. The respondents fail to recognize the distinction
         between liberty interest and property interest claims
         under the 14th Amendment's Due Process Clause -
         Erinwe's probationary status is not relevant to his
         liberty interest due process claim……………..….… 12

3. There is a continuum of severity of the statements that are "stigmatizing" under the 14th Amendment - Churchill County and Sheriff Trotter attempt to draw a confusing and false dichotomy between substantive and procedural liberty interest claims that does not exist in law……………………………………..…………... 13

C. The remedies in the Police Officers Bill of Rights were not available to Erwine because he was not an employee of Churchill County at the time he discovered Trotter's Memorandum and could not exhaust his administrative remedies……………………………..………………….... 16

D. Erwine's expert's methodology of reviewing the record is self evident - the District Court disagreed with the assessment of the facts provided by Erwine's expert ……..…………...…… 19

III.   CONCLUSION…………………………………..…………....…… 23

IV.   STATEMENT OF RELATED CASES………………...……..... 23

V.   CERTIFICATE OF COMPLIANCE………………..……......… 24

CERTIFICATE OF SERVICE ………………………...……………….. 25

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Ames v. King Cty., Wash.*
　　846 F.3d 340, 347 (9th Cir. 2017)........................................................ 10

*Blantz v. Cal. Dep't of Corr. & Rehab*
　　727 F.3d 917 (9th Cir. 2013)…………………………….... 14,15

*Board of Regents v. Roth*
　　408 U.S. 564 (1972)…………………………………….. 13,14

*Campanelli v. Bockrath*
　　100 F.3d 1476 (9th Cir. 1996)……………...…………………….. 9

*Codd v. Velger*
　　429 U.S. 624, 97 S. Ct. 882 (1977)........................................................ 13

*Cox v. Roskelley*
　　359 F.3d 1105 (9th Cir. 2004)................................................................ 19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
　　509 U.S. 579 (1993).............................................................................. 20

*Fikre v. FBI*
　　35 F.4th 762, 776 (9th Cir. 2022)........................................................ 14

*Humphries v. County of Los Angeles*
　　554 F.3d 1170, 1185 (9th Cir. 2009).................................................... 14

*Kramer v. Cullinan*
　　878 F.3d 1156 (9th Cir. 2018).............................................................. 9

*Parker v. Levy*
　　417 U.S. 733, 754, 94 S. Ct. 2547, 2560 (1974).................................. 10

*Paul v. Davis*

424 U.S. 693 (1976)................................................................................ 14

*Sciolino v. City of Newport News*
480 F.3d 642, 644 (4th Cir. Va. March 12, 2007).............................. 13

*Stretten v. Wadsworth Veterans Hosp.*
537 F.2d 361, 365 (9th Cir. 1976)....................................................... 13,15

*Thomas v. Ponder*
611 F.3d 1144 (9th Cir. 2010).............................................................. 11

*United States v. Holguin*
Nos. 19-50158, 19-50169, 19-50173, 2022 U.S. App. LEXIS 28477,
at *10 (9th Cir. Oct. 13, 2022)............................................................. 20

*United States v. Howe*
17 U. S. C. M. A. 165, 177-178, 37 C. M. R. 429, 441-442 (1967).. 10

*United States v. Valencia-Lopez*
971 F.3d 891, 899 (9th Cir. 2020)........................................................ 21

*United States v. Winters*
729 F.2d 602, 605 (9th Cir. 1984)........................................................ 23

*Wisconsin v. Constantineau*
400 U.S. 433,  91 S. Ct. 507 (1971)...................................................... 8

## STATUTES

NRS 239B.020………………………………………………………… 4

NRS 288…………………………………………………………….... 16

NRS 289.060……………………………………………………….. 17

NRS 289.120………………………………………………………… 16,17

# RULES

FRCP 56…………………………………………………………………….... 11

# OTHER

*W. Winthrop, Military Law and Precedents* 711-712 (2d ed. 1920)................. 10

# I. INTRODUCTION

Appellees CHURCHILL COUNTY, a political subdivision of the State of Nevada (hereinafter "Churchill County") and former CHURCHILL COUNTY SHERIFF BENJAMIN TROTTER's (hereinafter "Sheriff Trotter") position in the Appellees' Answering Brief (hereinafter "AB") is based on the core argument that because Appellant MICHAEL ERWINE (hereinafter "Erwine") was able to get a job after he was employed at Churchill County, that his claims he was deprived of his liberty interest in future employment without due process fail as a matter of law. To reach this conclusion the Appellees request that Court ignore inconvenient facts about the circumstances surrounding Erwine's termination from Churchill County - such as the fact that Churchill County had produced no evidence that any employer who hired Erwine after he left Churchill County had any knowledge of Sheriff Trotter's Memorandum or spoke to Sheriff Trotter. It also asks the Court to disregard its own precedent holding that it is the nature of the stigmatizing statement that matters when analyzing a due process claim based on the deprivation of a liberty interest.

As explained below, the Court should not accept Churchill County and Sheriff Trotter's illogical argument that subsequent employment in a given field *per se* undermines a liberty interest due process claim, even where the evidence fails to show that subsequent employers have any knowledge of the stigmatizing statements at issue.

Erwine paid and is still paying a dear price for having recorded in writing that he was concerned about the way that an inmate was being treated at the Churchill County Jail. Erwine did exactly what is expected of ethical and law-abiding peace officers when they observe troubling behavior by other officers. In response, Sheriff Trotter made a corrupt and intentional decision to destroy Erwine's reputation and ability to gain employment as a police officer by lodging career destroying accusations at Erwine, without ever giving Erwine notice or an opportunity to clear his name before the information was placed into his file and distributed to other law enforcement agencies. We can never expect police officers to do the right thing and to report the misconduct of fellow officers if in response they will lose their jobs and have their careers destroyed by ambush, as the undisputed facts show occurred with Mr. Erwine.

///

## II. CHURCHILL COUNTY'S ARGUMENTS

### A.    The facts: disputed issues of fact pervade this case

### 1.  Erwine presented declarations from the Pyramid Lake Paiute Tribe and the Washoe Tribe of Nevada and California showing they were unaware of Trotter's Memorandum

Churchill County and Sheriff Trotter argue there was no issue of material fact as to whether Erwine obtained employment in his chosen field after his separation from employment with Churchill County based on his positions at Pyramid Lake Paiute Tribe and the Washoe Tribe of Nevada and California.  *See* AB at 11.  Churchill County and Sheriff Trotter's argument is based on the false assumption that the Pyramid Lake Paiute Tribe and the Washoe Tribe of Nevada had actual knowledge of Trotter's Memorandum, but hired Erwine anyway - meaning that Trotter's stigmatizing statements didn't matter and did not result in stigmatization. The Declarations of Leslie Hawley at ER 297-298 and of Sergeant Casey Ryan at ER 299-300, both of whom conducted background investigations of Mr. Erwine on behalf of the their respective tribal employers, indicate that neither the Pyramid Lake Paiute Tribe and the Washoe Tribe of Nevada and California obtained any information from Churchill County

about Mr. Erwine, much less derogatory information, before hiring

Erwine.

## 2. Churchill County presented no evidence that Erwine's other employers ever saw the Trotter Memorandum

Churchill County and Sheriff Trotter also claim that Erwine's claim

should fail because he worked for private security firms after being fired

from Churchill County. AB at 3. At the outset, Erwine's private

employers would not be permitted to view his employee file at Churchill

County, including the Trotter Memorandum, under Nevada law. Nevada

Revised Statute ("NRS") 239B.020(5) provides that the background

investigation portion of an employee file of a peace officer in the State of

Nevada is confidential and is only available to other "public safety

agencies," defined by NRS 239B.020(6)(e) as a fire fighting agency or a law

enforcement agency. In addition, Tribes are not "public safety agencies,"

as defined in NRS 239B.020(6)(e), and they are not entitled to these

records. Further, Churchill County and Sheriff Trotter have produced no

evidence that any of the private security firms for whom Erwine worked

ever saw or were aware of Trotter's Memorandum. As with Churchill

County's assertions about the Pyramid Lake Paiute Tribe and the Washoe

Tribe of Nevada, Churchill County never connected the dots between Trotter's Memorandum and his subsequent employment.

### 3. Erwine was qualified to be a cop when Churchill County hired Erwine to be a cop

Churchill County and Sheriff Trotter also argue that Erwine had been unsuccessful in his efforts to gain employment in law enforcement prior to being hired by Churchill County. See AB at 4. Erwine's alleged difficulties in obtaining employment prior to his Employment at Churchill County are not relevant to the question of whether Erwine was qualified to be a peace officer before he was hired by Churchill County - or to any issue in this case. The fact that Churchill County hired Erwine means that he was qualified and eligible to be a peace officer in the State of Nevada. As described in the Declaration of Michael Erwine at 2-ER-259, "Prior to leaving Churchill County in October of 2016, I had never failed a background investigation or been denied a law enforcement position because of background related issues…" The rejection letters Erwine received from various law enforcement agencies to whom he applied after leaving Churchill County (3-ER-495 to 510) clearly indicate serious background issues, such as the letter from the Las Vegas Metro Police at 3-ER-500 indicating that, "You are not eligible to apply with LVMPD for

any position Indefinitely, and your name will be removed from all eligibility list(s) and processes."

   **4. Churchill County and Sheriff Trotter fail to dispute Erwine's account of what happened with inmates Beaulieu and Maes at the Churchill County Jail.**

Churchill County and Sheriff Trotter argue that they "sharply dispute Erwine's characterization of the events involving Inmate Beaulieu and Inmate Maes, events which Erwine spends an inordinate amount of time detailing in his Opening Brief." Brief at 6. However, Churchill County and Sheriff Trotter offer no evidence to the Court to rebut the facts presented by Erwine in the Opening Brief describing the facts and circumstances surrounding his termination. In his memorandum, Sheriff Trotter expressly states that Erwine's account of what occurred with inmate Beaulieu was accurate:

> I also find substantial concern that Deputy Erwine's investigation seems to have found and confirmed what Beaulieu alleged -that grave shift would flush the floor toilet and laugh when Beaulieu would yell for water. This will be investigated further and separately from this topic.

2-ER-79

The accuracy of the allegations and conclusions of Sheriff Trotter in the October 10, 2016 Memorandum against Erwine are clearly in dispute

according to the statements of fact in the Declarations of Erwine at 2-ER-249-50 and 2-ER-259. If Sheriff Trotter had merely allowed Erwine to speak at the meeting on October 10, 2016, or held a name clearing hearing as required by law, he would have discovered that the night shift deputies had in fact maltreated Beaulieu, Erwine never encouraged Beaulieu file a lawsuit against Churchill County, Beaulieu was not uncooperative while in the cell to the extent that denying him water for hours was justified, the unprofessional conduct of the other deputies which Erwine noted in his report (i.e. flushing the toilet in Beaulieu's cell when he was begging for water) actually happened, Erwine never fired his Taser at Maes, the Maes incident warranted Erwine drawing his Taser, and Erwine never aimed his Taser at Maes. *Id.* A reasonable jury could conclude from the totality of the circumstances that Sheriff Trotter fired and permanently damaged Erwine's career based on false allegations against Erwine to cover up the misconduct of his employees at the Churchill County Jail.

//

///

**B. The law: Churchill County and Sheriff Trotter misstate the law as to what constitutes a due process claim based on a deprivation of a liberty interest in future employment**

 **1. There is sufficient evidence for a reasonable jury to conclude that Trotter's statements about Erwine were stigmatizing**

In a clear and colorful case, *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 510 (1971), the Supreme Court emphasized that the government may not impose a grievous loss to a person's reputation without due process. Wisconsin law provided for the posting of notices prohibiting the sale of alcohol to persons identified on a list as excessive drinkers, without ever providing the right of listed persons to contest the placement of their name on the list. The Court described the list as "degrading," and held that "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.*

Churchill County and Sheriff Trotter argue that "Nothing about these statements can be defined as 'stigmatizing' within the meaning of the Fourteenth Amendment." AB at 7 at 7. In making the argument, however, Churchill County and Sheriff Trotter do not specifically address many of the most damning statements in Trotter's Memorandum, and

where they do, they simply conclude that the statements are not stigmatizing without any analysis. Whether a statement rises to the level of "stigmatizing" is a question of fact, and in this case a reasonable jury could conclude that Trotter's statements about Erwine, that he engaged in "conduct unbecoming a deputy," an "unjustifiable use of force," "unprofessional behavior," and he "discredits our agency and our profession" (See 2-ER 7-80) are stigmatizing. *Kramer v. Cullinan*, 878 F.3d 1156, 1162 (9th Cir. 2018) citing *Campanelli v. Bockrath*, 100 F.3d 1476, 1480 (9th Cir. 1996).

For example, Churchill County and Sheriff Trotter argue that "conduct unbecoming an officer," a charge leveled by Trotter against Erwine in his Memorandum at 2-ER 78-80, does not suggest that he engaged in "amoral conduct." See AB at 21. "Conduct unbecoming an officer" is a term that calls into question the moral character of a person against whom such a charge is leveled. The term in most commonly used in the context of infractions of the Uniform Code of Military Justice, and applies to serious infractions with a moral component, and is plainly stigmatizing as described by the Supreme Court below:

> Though it need not amount to a crime, it must offend
> so seriously against law, justice, morality or decorum as

> to expose to disgrace, socially or as a man, the offender, and at the same time must be of such a nature or committed under such circumstances as to bring dishonor or disrepute upon the military profession which he represents.

*Parker v. Levy*, 417 U.S. 733, 754, 94 S. Ct. 2547, 2560 (1974) quoting *United States v. Howe*, 17 U. S. C. M. A. 165, 177-178, 37 C. M. R. 429, 441-442 (1967) quoting *W. Winthrop, Military Law and Precedents* 711-712 (2d ed. 1920).

Churchill County and Sheriff Trotter argue that because review of this matter by this Court is *de novo* the District Court's contradictory findings in two separate orders as to whether Trotter's statements at issue "go towards morality," are "wholly without merit." *See* Brief at 19. When reviewing an appeal of a grant of summary judgment *de novo*, the facts and reasonable inferences are to be viewed in the light most favorable to the non-moving party. *Ames v. King Cty., Wash.*, 846 F.3d 340, 347 (9th Cir. 2017). Here, Churchill County and Sheriff Trotter miss the point of discussing the District Court's contradictory rulings. The fact that the District Court reached the conclusion that "At least some of the statements in the memo are more than mere accusations of incompetence and go towards morality" (3-ER -365) means that it makes no sense for

the same Court to say that "no reasonable juror" could draw that same conclusion six months later. There is sufficient evidence for a reasonable jury to return a verdict in Erwine's favor as to the question of whether the statements of Trotter were stigmatizing. For the Court to rule otherwise in light of its own previous assessment of the facts was a violation of the mandate under FRCP 56(a) that "no genuine dispute as to any material fact" exist as a condition for the granting of summary judgment. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Erwine produced evidence from at least one potential employer, Las Vegas Metropolitan Police Department, that expressly denied Erwine's employment application and concluded that Erwine was permanently disqualified from employment with Las Vegas Metropolitan Police Department ***because of*** the statements of Sheriff Trotter. See 4-ER-569-70. "[Erwine's] actions make him unsuitable for employment with LVMPD." 4-ER-569. This is *prima facie* evidence that the statements of Sheriff Trotter were stigmatizing and a reasonable jury could conclude that the statements resulted in Erwine's "effective exclusion" from the law enforcement profession.

///

2.   **The respondents fail to recognize the distinction between liberty interest and property interest claims under the 14th Amendment's Due Process Clause - Erinwe's probationary status is not relevant to his liberty interest due process claim**

Churchill County and Sheriff Trotter claim the fact that Erwine was a probationary employee is an "important fact" in this case because Erwine has no property interest in continued employment with Churchill County - and as such, he had no right to due process. *See* AB at 11. Here, Churchill County and Sheriff Trotter's confusion about the law surrounding liberty interest due process claims is apparent. It is self evident that it is not necessary to prove that one has been deprived of a "property interest" in continued employment under the Due Process Clause of the 14th Amendment where the basis of the claim is the liberty interest that a person has in their freedom to pursue employment without government interference absent the protections of due process.

Even if a police officer is a probationary employee, they have a right under the Due Process Clause of the 14th Amendment to a name clearing hearing if stigmatizing information is to be placed in their employment file. "Although a probationary employee has no protected "property" interest in his employment with a city, a public employer cannot deprive a

probationary employee of his freedom to take advantage of other employment opportunities." *Sciolino v. City of NewportNews*, 480 F.3d 642, 644 (4th Cir. Va. March 12, 2007). It is clearly established in this Circuit that a hearing for a probationary or nontenured employee based on stigmatization is required "if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Codd v. Velger*, 429 U.S. 624, 628, 97 S. Ct. 882 (1977) (per curiam). A liberty interest is implicated when the state makes a charge against a person that might seriously damage his standing and associations in his community. *Stretten v. Wadsworth Veterans Hosp.*, 537 F.2d 361, 365 (9th Cir. 1976) citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 2709 (1972).

**3. There is a continuum of severity of the statements that are "stigmatizing" under the 14th Amendment - Churchill County and Sheriff Trotter attempt to draw a confusing and false dichotomy between substantive and procedural liberty interest claims that does not exist in law**

Churchill County and Sheriff Trotter argue that because Erwine had no protected property interest in continued employment with Churchill County that "Erwine must, with respect to his Fourteenth Amendment claim, meet the special test carved out by the courts under a substantive

liberty interest due process theory." AB at 11-12. No authority from this Court or any other is directly cited for this argument in the Answering Brief because none exists. To the contrary, in *Bd. of Regents v. Roth*, 408 U.S. 564, 566, 92 S. Ct. 2701, 2703 (1972) the Court clearly held that procedural due process rights apply to the deprivation of interests encompassed within the Fourteenth Amendment's protection of liberty *and* property. Very recently, this Court clarified that:

> …a plaintiff who has suffered reputational harm at the hands of the government may assert a cognizable liberty interest for procedural due process purposes if the plaintiff "suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'"

*Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022) quoting *Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2009) (quoting *Paul v. Davis*, 424 U.S. 693, 711, 96 S. Ct. 1155, 1165 (1976)), rev'd in part on other grounds, 562 U.S. 29, 131 S. Ct. 447, 178 L. Ed. 2d 460 (2010)).

The Appellees' position is also based on a fundamental misunderstanding of the continuum of what constitutes a "stigmatizing" statement under the 9th Circuit's decision in *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917 (9th Cir. 2013). If the government levels a good-faith stigmatizing charge in

connection with the termination of a government employee, yet provides the employee with notice of the charge and a hearing at which the employee may contest the charge, the employee does not have grounds to claim that the government deprived that employee of a liberty interest without due process of law. As very clearly described in footnote 6 of this Court's decision in *Blantz*, liberty interest due process claims are procedural due process claims. Accusations of dishonesty and immorality are by definition stigmatizing and trigger due process protections, but less severe accusations are to be examined on a case-by-case basis. In footnote 6, the Blantz Court cites this Court's prior decision in *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 366 (9th Cir. 1976) describing that the nature of the charge itself is the determinative factor as to whether its is stigmatizing, and whether the statement constitutes "effective exclusion" from a given profession: "While Roth's line between 'liberty' interests and all other interests is imprecise, this Circuit has concluded that it should be drawn on the basis of the nature of the charge used as a grounds for termination and not the actual consequences of the charge." *Id.*

///

**C. The remedies in the Police Officers Bill of Rights were not available to Erwine because he was not an employee of Churchill County at the time he discovered Trotter's Memorandum and could not exhaust his administrative remedies**

Churchill County and Sheriff Trotter argue that Erwine had a remedy available under state law to address his grievances against Churchill County and Sheriff Trotter under the Nevada's Peace Officers Bill of Rights, codified in NRS 289.120. Brief at 13. NRS 289.120 requires that an aggrieved officer must first exhaust any applicable internal grievance procedures, grievance procedures negotiated pursuant to chapter 288 of NRS and other administrative remedies before seeking relief under the Police Officers Bill of Rights. Further, NRS 289.120 does not authorize a suit for damages, only injunctive relief: "...to prevent the further occurrence of the violation and the taking of any reprisal or retaliatory action by the employer against the peace officer." There is no dispute that Trotter surreptitiously placed the memorandum in Erwine's employee file without informing Erwine he was going to do so, and Erwine did not discover that Trotter's Memorandum was placed into his file a year and a half after he was terminated from Churchill County and failed several background investigations. *See* Declaration of Michael Erwine at 2-ER-249-250 and Response to Interrogatory No. 8 2-ER-84,

admitting that Trotter's Memorandum was never shown to Erwine such that he may have read and initialed the document before it was placed in his personnel file.  See also the Declaration of Michael Erwine at 2-ER-259: "Prior to leaving Churchill County in October of 2016, I had never failed a background investigation or been denied a law enforcement position because of background related issues…"

The provisions of NRS 289.120 and the protections of the Police Officer's Bill of Rights are written in such a manner that they assume compliance with basic due process protections under the 14th Amendment to the Constitution, that is, that an employee would at least know of the fact that derogatory information could or would be placed into their file and potentially be disseminated to future employers.  NRS 289.060(1) provides a peace officer with the right to 48 hours notice of a hearing or interrogation if an officer is accused of misconduct - along with the right to have an attorney or union representative present at the hearing or interrogation.  See Appellees' Response to Interrogatory No. 12 at 2-ER-86, admitting that Erwine was not provided with 48 hours notice of the October 10, 2016 meeting at which he was fired.  In fact, Erwine received no notice at all of the October 10, 2016 meeting at which

he was fired. See Declaration of Michael Erwine at 2-ER-70. Further, Erwine could not take advantage of the protections afforded by the Police Officer's Bill of Rights because he could not exhaust his administrative remedies as required when he was no longer an employee of Churchill County.

Churchill County and Sheriff Trotter also argue in footnote 3 of the Answering Brief that Erwine did not request a name clearing hearing after his termination from Churchill County, without providing any evidence that such a hearing was available to Erwine under Churchill County's policies and procedures after he was terminated. In the citation to the record provided in footnote 3 of the Answering Brief, to 3-ER 340-341, Erwine describes at his deposition that he tried to raise the issue of why he was being terminated but was cut off, i.e. he was not permitted to defend himself. Churchill County raises this issue before the Court for the first time in this case in its Answering Brief and it is well aware that its policies do not allow terminated probationary employees to file grievances. As indicated in Erwine's Declaration at 2-ER-070, at the meeting where he was terminated he attempted to explain what occurred, but was not afforded the opportunity to do so. The damage to Erwine

was already done at the time he discovered that Trotter's Memorandum was placed in his file. Where state law requires, as it does here, disclosure of an employee file merely placing stigmatizing information into an employee's file without due process constitutes publication. *Cox v. Roskelley*, 359 F.3d 1105, 1111 (9th Cir. 2004). Erwine had no reason to request a name clearing hearing before being escorted out of the Churchill County jail after he was fired because he had no knowledge that he had been accused of wrongdoing or that stigmatizing information would be placed into his employee file. When Erwine did discover the existence of Trotter's Memorandum, he was no longer an employee of Churchill County and therefore could not avail himself of the grievance process that would permit him to seek a name clearing hearing.

**D. Erwine's expert's methodology of reviewing the record is self evident - the District Court disagreed with the assessment of the facts provided by Erwine's expert**

The District Court's assessment of Dreher's testimony largely went to the weight of the testimony, not its admissibility. The District Court cited the methodology used by Dreher, i.e. he was basing his opinions on his experience in law enforcement, but then quizzically concluded that no methodology was provided:

> "Mr. Dreher summarily derives these grand conclusions from his "extensive experience in law enforcement and in representing police unions in negotiations and before the Nevada Legislature." (ECF No. 176 at 12.) Mr. Dreher fails to provide any specific methodology from which he was able to reach these judgments.

1-ER-19.

The District Court held no Daubert hearing or voir dire of Dreher before refusing to accept as true his report. Recently, this Court has made clear that such a finding without a hearing or voir dire is ill advised:

> Without such proceedings, it may be difficult in many cases for the district court to clearly discern an expert's methodology and to evaluate how that methodology connects to the expert's opinions. When an expert's methodology is directly presented and probed, the district court will be well positioned to make the reliability findings that our cases require, as discussed below.

*United States v. Holguin*, Nos. 19-50158, 19-50169, 19-50173, 2022 U.S. App. LEXIS 28477, at *10 (9th Cir. Oct. 13, 2022).

In refusing to consider Dreher's report, the District Court did not apply the standard in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) in any discernible manner. Dreher's report (2-ER-724) is straightforward and its conclusions are anything but "grand." As indicated in Dreher's resume at 2-ER-290, Dreher was a Reno Police Officer from

March 15, 1973 to July 23, 1999. He also has extensive experience representing police unions (2-ER-293-294) and drafted and lobbied for the passage of the Police Officer's Bill of Rights described in part above (2-ER-275). At the beginning of Dreher's report, he lists the documents he reviewed in rendering his opinions. 2-ER-274. Dreher's commonsense conclusions that: (1) Erwine's chances of being employed by the state or a local government as a police officer are "almost zero" (Id. at 283); (2) That it was likely that the information in Trotter's memorandum was shared with other law enforcement agencies verbally or in writing (*Id.* at 285); and (3) that is abnormal for a police candidate to be indefinitely disqualified applying for employment. *Id.* at 286. When the District Court labeled Dreher's commonsense conclusions from Dreher as "grand," it overstepped its role by weighing the evidence at the summary judgment stage rather than simply making an admissibility determination. *United States v. Valencia-Lopez,* 971 F.3d 891, 899 (9th Cir. 2020).

Similarly, Churchill County and Sheriff Trotter argue the facts underlying Dreher's report, that Dreher opined in his report that Erwine was "labeled as a liability by Sheriff Trotter," are "without any foundation whatsoever." See AB at 22. However, in Trotter's Memorandum, Trotter

expressly described an "Items of Concern" about Erwine and states that, "This creates liability for this agency now or for some time into the future should Inmate Maes elect to pursue civil action." 2-ER-80.

FRCP 56(c)(2) was updated as part of the 2010 amendments to FRCP 56. FRCP 56(c)(2) states that a party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The 2010 amendments to FRCP 56 mandate only that the substance of the proffered evidence would be admissible at trial. Dreher's testimony is clearly relevant under FRA 401, as it addresses the disputed issue of fact as to the effect of Trotter's Memorandum and statements on Erwine's career as a peace officer. Under FRE 702, Dreher's testimony is admissible as the subject matter at issue, police background investigation practices and police culture, is beyond the common knowledge of the average person, Dreher has sufficient expertise, and his specialized experience permits the assertion of a reasonable opinion - i.e. that when background investigations of Erwine are conducted, its likely that Trotter's Memorandum or the substance thereof would be communicated to other law enforcement agencies, even if there is no record of a conversation with Trotter or other Churchill

County official in the file. *United States v. Winters*, 729 F.2d 602, 605 (9th Cir. 1984).

## VII.  CONCLUSION

Based on the foregoing,  Erwine respectfully requests that the Court reverse the District Court's Order granting summary judgment to Sheriff Trotter and Churchill County on Erwine's federal claims and dismissal of his pendent state law claims, and remand this matter back to the District Court for further proceedings.

## VIII.  STATEMENT OF RELATED CASES

This matter was previously the subject of an appeal before this Court in 9th Circuit Docket No. 19-16094, in which Erwine successfully appealed a decision by the District Court to enforce a settlement to which Erwine never finally agreed.  The undersigned counsel is unaware of any other related cases.

Respectfully submitted this  Nov 3, 2022

By:__Luke Busby, Esq. _____
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

## XI.  CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that: This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,002 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Google Docs, in Garamond 15-point font.

Respectfully submitted this  Nov 3, 2022

By:__Luke Busby, Esq. _____
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for Michael Ervine*

## CERTIFICATE OF SERVICE

I hereby certify that on  Nov 3, 2022  I electronically filed the

foregoing with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served

by the appellate CM/ECF system.

Katherine F. Parks, Esq.
Thorndal Armstrong
6590 S. McCarran Blvd. Suite B.
Reno, NV 89509
Attorney for Churchill County

Respectfully submitted this  Nov 3, 2022

By:___Luke Busby, Esq._____
Luke Busby, Esq.
Nevada State Bar No. 10319
316 California Ave.
Reno, NV 89509
775-453-0112
luke@lukeandrewbusbyltd.com

*Attorney for Michael Ervine*